Kevin Jewell, Justice
Appellant John Toth brings this interlocutory appeal of the trial court's order denying his motion to dismiss under the Texas Citizens Participation Act ("TCPA").[1] Toth is a former flooring independent contractor for appellee Sears Home Improvement Products, Inc. Sears sued Toth, alleging that Toth breached certain contract terms by engaging in communications with a Sears flooring customer. Contending that Sears's claims are based on or relate to Toth's free speech rights, Toth filed a motion to dismiss under the TCPA. Sears opposed the motion on grounds that: (1) the TCPA does not apply; (2) Sears's claims are exempted from the act under section 27.010(b)'s "commercial speech" exemption; and (3) clear and specific prima facie evidence supports each essential element of its breach of contract claim. The trial court denied Toth's motion to dismiss.
We conclude that the TCPA applies to Sears's lawsuit. Further, we agree with Toth that the "commercial speech" exemption is not established on this record. Finally, Sears did not present clear and specific prima facie evidence to support each essential element of its breach of contract claim. We accordingly reverse the order denying Toth's motion to dismiss and remand for proceedings consistent with this opinion, including a determination of attorney's fees and other costs.
Background
Sears sold various flooring home improvement products until approximately April 2014, when it discontinued its flooring business. Toth provides flooring services through his company, Artistic Flooring. In 2013, Toth and Sears entered into an "Independent Contractor Agreement,"
*147 under which Toth agreed to provide flooring services and/or to install flooring merchandise on Sears's behalf.
Sears sold wood flooring to Winifred Langham. Sometime after Sears installed the flooring, Langham complained to Sears that moisture was rising through the floor and damaging the wood. Pursuant to its contract with Toth, Sears assigned Toth to inspect Langham's floor, determine the cause of the problem, and recommend a solution to Sears.[2] Toth conducted an initial visual inspection and later performed certain diagnostic testing. Toth recommended that Langham's floor be re-installed. Toth also recommended to Sears that the re-installation process include the product Bostik, a membrane sealant designed to reduce moisture vapor emissions. Toth believed that Bostik would create a barrier underneath Langham's wood flooring and prevent the moisture problem from reoccurring.
The above described events occurred between December 2012 and approximately May 2014. Sears withdrew from the flooring business in or about April 2014. Toth provided Sears a termination notice under the contract on April 27, 2014, and the contract expired by its terms thirty days later on May 27, 2014.
Sears ultimately decided not to replace Langham's floor. Instead, Sears offered to fully reimburse Langham's initial purchase price. Langham rejected Sears's offer and filed suit against Sears in January 2015.
Langham deposed Toth in August 2015 as part of her suit against Sears. During his testimony, Toth described his involvement in Sears's attempt to resolve Langham's flooring complaint. Over one year after Toth's deposition, Langham hired Toth to replace her floor. Subsequently, Sears joined Toth as a third-party defendant in Langham's suit. Sears alleged that Toth's communications with Langham violated the following confidentiality provisions of the agreement between Toth and Sears:
18. Confidential Business Information
(a) 'Confidential Business Information' means any information, whether disclosed in oral, written, visual, electronic or other form, which Sears discloses or Contractor observes in connection with Contractor's performance of its obligations under this Agreement. Confidential Business Information includes, but is not limited to, work product; Sears business plans, strategies, forecasts and analyses; Sears financial information; Sears employee and vendor information; Sears software (including all documentation and code); hardware and system designs, architectures and protocols; Sears product and service specifications; Sears purchasing, logistics, sales, marketing and other business processes; and the terms and existence of the Agreement.
(b) Contractor shall use Confidential Business Information only as necessary to perform its obligations under this Agreement. Contractor shall restrict disclosure of Confidential Business Information to its employees, agents or authorized subcontractors who have a need to know such information to perform its obligations hereunder and who have first agreed to be bound by the terms of this Section 18....
19. Confidential Personal Information
(a) Contractor agrees that all information about Sears Customers provided by Sears to Contractor, including but not limited to names, addresses, telephone numbers, account numbers, customer lists, and demographic, financial and *148 transaction information ("Confidential Personal Information"), shall be deemed confidential.
(b) Contractor shall use Confidential Personal Information only as necessary to perform its obligations under the Agreement. Contractor shall not duplicate or incorporate the Confidential Personal Information into its own records or databases. Contractor shall restrict disclosure of Confidential Personal Information to its employees, agents or authorized subcontractors who have a need to know such information to perform its obligations hereunder and who have first agreed to be bound by the terms of this Section 19....
(f) Contractor shall notify Sears promptly upon the discovery of the loss, unauthorized disclosure or unauthorized use of the Confidential Personal Information....
21. Sears Customers
All Customers and all leads and prospects resulting from Sears work belongs to Sears and the Contractor agrees to notify Sears of all such prospective jobs or Customers. All leads and prospects resulting from Contractor's non-Sears work remain the property of the Contractor. Furthermore, Contractor acknowledges and agrees that it shall be deemed a material breach of this Agreement for Contractor to solicit, recommend or sell a non-authorized Sears product or a non-authorized Sears service to a Customer.
In its Fourth Amended Third Party Petition, Sears alleged that Toth breached the contract when he: (1) used Sears's confidential business information to communicate with Langham without Sears's permission and authority; (2) used Sears's confidential business information to enter into a business relationship with Langham; (3) solicited a non-authorized product, Bostik, to Langham; and (4) failed to notify Sears of a disclosure of confidential information.
After Langham and Sears signed a settlement agreement, Langham dismissed her claims against Sears, leaving only Sears's breach of contract claim against Toth at issue.
Toth filed a motion to dismiss Sears's claim pursuant to the TCPA. Toth argued that Sears's claim is based on, relates to, or was brought in response to Toth's communications with Langham concerning flooring goods or flooring services. Toth urged that he established the TCPA applied and therefore Sears was required to present clear and specific prima facie evidence of each essential element of its breach of contract claim. According to Toth, Sears could not meet its burden as to two required elements of Sears's claim: breach and injury. Thus, Toth sought dismissal of Sears's claim under the TCPA and requested attorney's fees and "sanctions as appropriate."
In response, Sears argued that: (1) Toth failed to show by a preponderance of the evidence that the TCPA applied; (2) Sears's action against Toth was exempted from the TCPA under section 27.010(b), the "commercial speech" exemption; and (3) Sears presented clear and specific prima facie evidence on all elements of its breach of contract claim. As to Sears's prima facie case, Sears argued that Toth's breaches of the contract affected Sears's ability to resolve Langham's claims, causing Sears damage.
After a hearing, the trial court denied Toth's motion. Toth appeals.[3]
*149 Analysis
In three issues (Toth's first, second, and fourth issues on appeal), Toth argues that the trial court erred in denying his motion to dismiss because (1) he satisfied his initial burden to show that the TCPA applied to Sears's lawsuit, and (2) Sears did not present clear and specific prima facie evidence supporting each element of its breach of contract claim. In his third issue, Toth contends that Sears failed to establish that the "commercial speech" exemption removed Sears's claim from the TCPA's purview.
A. Standard of Review and Governing Law
We consider whether the trial court properly refused to dismiss Sears's suit under the TCPA, which is codified in Chapter 27 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code §§ 27.001 -.011. The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." Fawcett v. Grosu , 498 S.W.3d 650, 654 (Tex. App.-Houston [14th Dist.] 2016, pet. denied) (op. on reh'g) (citing Jardin v. Marklund , 431 S.W.3d 765, 769 (Tex. App.-Houston [14th Dist.] 2014, no pet.) ). The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002 ; Cox Media Grp., LLC v. Joselevitz , 524 S.W.3d 850, 859 (Tex. App.-Houston [14th Dist.] 2017, no pet.). It "protects citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." In re Lipsky , 460 S.W.3d 579, 586 (Tex. 2015). We construe the TCPA liberally to effectuate its purpose and intent fully. See Adams v. Starside Custom Builders, LLC , 547 S.W.3d 890, 894, 2018 WL 1883075, at *3 (Tex. Apr. 20, 2018) ; ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); Joselevitz , 524 S.W.3d at 859 ; Tex. Civ. Prac. & Rem. Code § 27.011(a).
To further its stated goals, the TCPA establishes a mechanism for summary dismissal of lawsuits that unacceptably threaten the rights of free speech, the right to petition, or the right of association. See Lipsky , 460 S.W.3d at 589 ; Fawcett , 498 S.W.3d at 655. A defendant invoking the act's protections must show first, by a preponderance of the evidence, that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of one or more of the enumerated rights. Lipsky , 460 S.W.3d at 586 (internal quotation omitted). If the defendant makes the initial showing, the burden shifts to the plaintiff to " 'establish [ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.' " See ids="6872091" index="11" url="https://cite.case.law/sw3d/460/579/#p586">id. at 587 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c) ). "Prima facie case" refers to the quantum of evidence required to satisfy the non-movant's minimum factual burden and generally refers to the amount of evidence that is sufficient as a matter of law to support a rational inference that an allegation of fact is true. See id. at 590 ; Deaver v. Desai , 483 S.W.3d 668, 675-76 (Tex. App.-Houston [14th Dist.] 2015, no pet.). Still, while the act imposes no elevated evidentiary standard, the evidence offered to support a prima facie case must be "clear and specific." This requires "more than mere notice pleading." Bedford v. Spassoff , 520 S.W.3d 901, 904 (Tex. 2017) (per curiam); see also Lipsky , 460 S.W.3d at 590-91. Clear and *150 specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." Bedford , 520 S.W.3d at 904 (internal quotation omitted). If the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case, the trial court must dismiss the plaintiff's claim. Tex. Civ. Prac. & Rem. Code § 27.005.[4]
A plaintiff can avoid the act's burden-shifting requirements by showing that one of the act's several exemptions applies. See id. § 27.010. One of those exemptions-known as the "commercial speech" exemption-impacts the present dispute, and we discuss it subsequently.
In construing the act and determining its applicability, we review statutory construction issues de novo. See Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). This court has applied de novo review to the propriety of dismissals under the TCPA, Fawcett , 498 S.W.3d at 656, including to whether a movant has proven the act's applicability by a preponderance of the evidence under section 27.005(b). QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P. , 524 S.W.3d 770, 776 (Tex. App.-Houston [14th Dist.] 2017, pet. denied) ; Deaver , 483 S.W.3d at 672 ; Rehak Creative Servs., Inc. v. Witt , 404 S.W.3d 716, 725 (Tex. App.-Houston [14th Dist.] 2013, pet. denied), disapproved on other grounds by Lipsky , 460 S.W.3d at 587, 591. Under the de novo standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." Fawcett , 498 S.W.3d at 656 (internal quotation omitted).
We apply this standard of review to a relatively limited universe of evidence. Trial courts must consider the relevant pleadings. See Tex. Civ. Prac. & Rem. Code § 27.006(a). Courts also must consider any supporting or opposing affidavits "stating the facts on which the liability or defense is based." See id.[5] Finally, for good cause, the trial court may also allow specific and limited discovery relevant to the motion. Id. § 27.006(b).
Here, the parties attached or referenced the live pleadings, affidavits, the independent contractor agreement, and deposition excerpts. No party objected to any exhibit so we presume all the discovery products were properly before the trial court and we consider them.
B. Exercise of Free Speech
Our first inquiry is whether Toth showed by a preponderance of the evidence that the TCPA applies to Sears's breach of contract claim. The act requires Toth, as the movant, to establish that Sears's legal action is "based on, relates to, or is in response to" Toth's exercise of the right of free speech. See Lipsky , 460 S.W.3d at 586 (internal quotation omitted). Under the TCPA, a communication made in connection with a matter of public concern constitutes an exercise of the right of free speech. Tex. Civ. Prac. & Rem. Code § 27.001(3) ;
*151 Ford v. Bland , No. 14-15-00828-CV, 2016 WL 7323309, at *2 (Tex. App.-Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). The act defines a "matter of public concern" to include an issue related to, inter alia , a "good, product, or service in the marketplace." Id. § 27.001(7)(E).
Turning first to Sears's allegations in its live petition, Sears states that Toth "began having direct communications with [Langham] providing her with information and documentation in support of her claims against [Sears]." According to Sears, during the course of Toth's interactions with Langham, he breached the confidentiality provisions of the independent contractor agreement when he used confidential information to communicate with Langham without Sears's permission and entered into a personal business transaction with Langham to repair her floor. Toth also "solicited an unauthorized product to [Langham] that was not authorized" by Sears.
Toth argues that his communications with Langham were in connection with flooring products or services in the marketplace. In support of his position, Toth cites his deposition testimony, which describes the nature of his communications with Langham. These communications included Toth's suggestion of Bostik as a potential solution to Langham's moisture issue. Toth also testified that he made statements to Langham regarding the condition of her floor at the time he viewed it.
In response, Sears cites the portions of Toth's deposition testimony in which he stated that, sometime around the end of 2014 or beginning of 2015, Toth had a phone conversation with Langham during which Toth asked if Langham's floor issue was resolved and Langham responded that she had filed a lawsuit against Sears. Sears also referred to two pages of Langham's deposition, in which she described Toth's comments regarding Bostik. Toth forwarded a Bostik marketing brochure to Langham as well. Sears summarizes Toth's alleged breaches as violations of the agreement's confidentiality provisions, "which were manifested in his unauthorized communications with Langham concerning [Sears's] decision not to reinstall her flooring, the guarantees of the Bostik product, and the general condition of her flooring."
Citing Lahijani v. Melifera Partners, LLC , No. 01-14-01025-CV, 2015 WL 6692197 (Tex. App.-Houston [1st Dist.] Nov. 3, 2015, no pet.) (mem. op.), Sears contends that Toth's actionable conduct "has nothing to do with a 'matter of public concern.' " In Lahijani , the First Court of Appeals held that a party's complaint regarding a real estate broker's commission fee did not fall under the purview of the TCPA because the statements did not mention services in the marketplace and were instead communications related to a business dispute over a real estate joint venture. Id. at *4.
We think the present circumstances are distinguishable from Lahijani , as the assertions described in the record are fairly characterized as communications made in connection with an issue related to a good, product, or service in the marketplace. Tex. Civ. Prac. & Rem. Code § 27.001(1), (3), (7). We therefore agree that Sears's cause of action against Toth is based on, relates to, or is in response to Toth's exercise of his right of free speech. See Ford , 2016 WL 7323309, at *2. Accordingly, we sustain Toth's first issue and conclude that Toth made the initial showing required under the TCPA.
*152 Tex. Civ. Prac. & Rem. Code § 27.005(b). The burden then shifted to Sears to establish a prima facie case for its breach of contract claim. Id. § 27.005(c).
C. Applicability of the Commercial Speech Exemption
Before evaluating Sears's prima facie evidence, we address Sears's argument that Toth's challenged statements or conduct constituted "commercial speech" exempted from the act's protection. See Tex. Civ. Prac. & Rem. Code § 27.010(b). Toth disputes that the exemption applies.
Under the commercial speech exemption, the TCPA does not apply:
to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.
Id.
Generally, "the burden of proving a statutory exception rests on the party seeking the benefit from the exception." Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc. , 402 S.W.3d 299, 309 (Tex. App.-Dallas 2013, pet. denied) ; City of Houston v. Jones , 679 S.W.2d 557, 559 (Tex. App.-Houston [14th Dist.] 1984, no writ). Accordingly, Sears had the burden to prove that the commercial speech exemption applies. See Deaver , 483 S.W.3d at 673.
Addressing Sears's argument requires us to construe and apply section 27.010(b) 's text. In interpreting statutes, our primary purpose is to give effect to the legislature's intent by relying on the plain meaning of the text adopted by the legislature, unless a different meaning is supplied by statutory definition or is apparent from the context, or the plain meaning leads to absurd results. Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010) ; see also Union Carbide Corp. v. Synatzske , 438 S.W.3d 39, 52 (Tex. 2014) ; Liberty Mut. Ins. Co. v. Adcock , 412 S.W.3d 492, 494 (Tex. 2013) ("[O]ur primary objective in construing a statute is to ascertain and give effect to the Legislature's intent."). "We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd results." Synatzske , 438 S.W.3d at 52. "We take statutes as we find them, presuming the Legislature included words that it intended to include and omitted words it intended to omit." Id. "We do not read words into a statute to make it what we consider to be more reasonable, rather we may do so only to prevent an absurd result." Id.
The Supreme Court of Texas recently clarified section 27.010(b) 's proper construction. Castleman v. Internet Money Ltd. , 546 S.W.3d 684, 2018 WL 1975039 (Tex. Apr. 27, 2018) (per curiam); see also Tex. Civ. Prac. & Rem. Code § 27.010(b). The exemption applies when:
(1) the defendant was primarily engaged in the business of selling or leasing goods,
(2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
(3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and *153 (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.
Castleman , 546 S.W.3d at 687, 2018 WL 1975039, at *3. Thus, the court continued, "the commercial-speech exemption applies only to certain communications related to a good, product, or service in the marketplace-communications made not as a protected exercise of free speech by an individual, but as 'commercial speech which does no more than propose a commercial transaction.' " Id. at 690, at *6 (quoting Posadas de P.R. Assocs. v. Tourism Co. of P.R. , 478 U.S. 328, 340, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986) ).
The exemption may be established as to some statements but not others. See, e.g. , MVS Int'l Corp. v. Int'l Advertising Sols., LLC , 545 S.W.3d 180, 195, 2017 WL 4534331, at *9 (Tex. App.-El Paso 2017, no pet.) (holding commercial speech exemption applied to one statement but not others); see also Morales v. Barnes , No. 05-17-00316-CV, 2017 WL 6759190, at *3 (Tex. App.-Dallas Dec. 29, 2017, no pet.) (mem. op.) (concluding that TCPA applied to one communication but did not apply to a second communication). We therefore apply Castleman to each of Toth's challenged communications based on the pleadings and record evidence. The evidence establishes two general topics of communication between Toth and Langham. The first topic concerned Toth's statements to Langham regarding the Bostik product and its potential use in replacing Langham's floor. The second topic of communication between Toth and Langham concerned whether Langham's complaint with Sears had been resolved.
1. Toth's statements regarding Bostik
The record reflects that Toth researched the Bostik product, recommended the product to Sears, and told Langham about the product. Toth testified that he spoke to a Bostik representative, who assured him the product would work and "guaranteed" there would be no problem if Bostik were used. Toth personally believed that Bostik would solve the moisture issue. Langham testified that Toth told her, "that once that was-the floor, the wood was removed, the concrete dried, the moisture barrier put down, it would support the moisture that was coming up, the vapors that was coming up from the slab, and I wouldn't have any problem. And if there was ever a problem, that Bosti[k] guaranteed their work." Toth also forwarded an email to Langham from a Bostik representative that included a marketing brochure. Toth recalled that Langham might have asked him for the marketing materials. Our record does not contain a copy of either the marketing materials or the email so we do not know what the materials said or the date of the communication.
We assume Castleman's first element is met with respect to Toth's statements pertaining to Bostik. Toth does not contest that he, individually and doing business as Artistic Flooring, is a person "primarily engaged in the business of selling ... [flooring] services." Tex. Civ. Prac. & Rem. Code § 27.010(b). Further, regarding Castleman's fourth element, we presume without deciding that Langham was Toth's "potential customer" at the time of the challenged statements. See id. Langham's floor was in disrepair and Toth was in the business of repairing floors.[6]
However, the exemption is not established with respect to the remaining elements. The main thrust of Sears's argument *154 is that Toth made the Bostik statements in connection with soliciting the repair work for himself and, in fact, Langham subsequently became Toth's actual customer. For the exemption to apply, the defendant must have "made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services," and the statement or conduct at issue must have arisen out of a "commercial transaction involving the kind of goods or services the defendant provides. " Castleman , 546 S.W.3d at 688, 2018 WL 1975039, at *4 (emphasis added).
Here, the record provides no indication that Toth was a seller of Bostik. Even before Castleman , courts have held that the exemption is not established unless the challenged statement was "about" the speaker's particular goods or services, or the speaker's business of selling them. See MacFarland v. Le-Vel Brands LLC , No. 05-16-00672-CV, 2017 WL 1089684, at *9 (Tex. App.-Dallas Mar. 23, 2017, no pet.) (mem. op.) (exemption not met because statement "not about" defendant's business of selling services); compare with MVS Int'l Corp. , 2017 WL 4534331, at *9 (holding exemption applied in light of unrebutted evidence that defendant made derogatory statements as part of defendant's business presentation to promote concert). As Castleman acknowledges, the mere fact that a person sells goods or services does not deny him the TCPA's protections when he speaks of "other goods" in the marketplace. Castleman , 546 S.W.3d at 688, 2018 WL 1975039, at *4 (emphasis added). When Toth told Langham about the product, he expressed his personal belief that the product would resolve the moisture issue. This was akin to expressing an opinion or evaluation about another's product in the marketplace, which is ordinarily protected speech. See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc. , 441 S.W.3d 345, 353-54 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (stating exercise of the right of free speech as contemplated by the TCPA includes person's right to communicate reviews or evaluations of services in the marketplace).
Further, the exemption applies only to those certain communications made not as a protected exercise of free speech by an individual, but as "commercial speech which does no more than propose a commercial transaction." Castleman , 546 S.W.3d at 690, 2018 WL 1975039, at *6 (internal quotation omitted). Castleman aligns with the approach taken by other Texas courts that have held the challenged statement or conduct must be made "for the purpose of securing sales in the goods or services of the person making the statement." Backes v. Misko , 486 S.W.3d 7, 21 (Tex. App.-Dallas 2015, pet. denied) (citing Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd. , 416 S.W.3d 71, 88-89 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) ). Sears does not identify any statement or conduct by Toth that described or promoted his business, goods, or services-or "propose[d] a commercial transaction"-to Langham. Castleman , 546 S.W.3d at 690, 2018 WL 1975039, at *6 (internal quotation omitted); see also Kinney v. BCG Attorney Search, Inc. , No. 03-12-00579-CV, 2014 WL 1432012, at *6-7 (Tex. App.-Austin Apr. 11, 2014, pet. denied) (mem. op.) (holding plaintiff failed to prove exemption because no evidence that offending statement referred to defendant's business or was made for purpose of securing sales for defendant). According to the deposition testimony, Toth proposed a commercial transaction to Sears-not to Langham-by recommending that Sears purchase the product and use it to repair *155 Langham's damaged floor. This would have been at no cost to Langham. Sears considered using the product but ultimately decided against it because, Toth says, Sears determined it was too expensive. There is no indication in this record that Toth made the Bostik statements to coax Langham into hiring him directly or to usurp Sears's opportunity to repair the floor of a dissatisfied customer.
Finally, the record does not establish that Toth made the challenged statement in his individual capacity as a seller of goods. See Castleman , 546 S.W.3d at 687-89, 691, 2018 WL 1975039, at *3-4, 6. For the exemption to apply, the speaker must have made the statement or engaged in the conduct in his capacity as one primarily engaged in the business of selling or leasing goods or services. Id. at 687, at *3. That is, the statement must "arise out of ... his status as a seller of those goods or services." Id. at 691, at *6. Toth made his statements about Bostik while performing under the contract as Sears's independent contractor. The only reason he was speaking to Langham at all was because Sears engaged him to evaluate and potentially repair her floor. The record contains no evidence showing that when Toth made the identified statements to Langham he was promoting his personal business by proposing to replace the floor himself instead of replacing the floor on Sears's behalf. Thus, the record does not show that Toth made his Bostik statement to Langham in an individual capacity as a seller of goods or services.
Considering the totality of this evidence, we conclude that the commercial speech exemption is not met with respect to Toth's statement regarding the Bostik product.
2. Toth's statements to Langham regarding her claim
The second area of communication forming the basis of Sears's argument pertains to a phone conversation between Toth and Langham during which Toth asked whether Langham's claim with Sears had been resolved. The record reveals the following. After Toth inspected and tested Langham's floor, Sears planned to replace the floor. However, the work did not move forward, and by May 2014 Sears informed Toth that Sears would refund Langham's money rather than replace her floor. Around this time (May 2014) Sears discontinued its flooring business, and the contract between Toth and Sears terminated. Toth explained that, from the spring of 2014 through approximately the end of 2014 or beginning of 2015, Langham called Toth on an "ongoing" basis to request additional contact numbers for Sears representatives because her calls to Sears were not being returned and she had no clarification on whether Sears would replace her floor. Toth testified that he called Langham around the end of 2014 to ask whether "she had gotten it resolved yet" because "that's the only job [he] never completely fixed for Sears." Langham responded that she had not "heard anything back."[7] Then Langham told Toth that she had filed a lawsuit against Sears. This was the last time Toth spoke to Langham before his deposition in August 2015.
Here again the challenged statement or conduct was not "about" Toth's services. See MacFarland , 2017 WL 1089684, at *9 (exemption not met because statement "not about" defendant's business of selling *156 services); Backes , 486 S.W.3d at 23 ("Nothing within the Post involves the sale or lease of any goods or services related to the quarter horse industry or any other related business."); Moldovan v. Polito , No. 05-15-01052-CV, 2016 WL 4131890, (Tex. App.-Dallas Aug. 2, 2016, no pet.) (mem. op.) (internet posts were not exempted from TCPA's protections because they were not about the defendant's business); Kinney , 2014 WL 1432012, at *7 (exemption did not apply because comments made no reference whatsoever to defendant's business or the sale of his services). In an affidavit attached to Sears's response to the motion to dismiss, Sears's counsel stated that Toth was communicating with Langham "about [Sears's] efforts to resolve her claim." But absent more factual context, this statement by counsel is insufficient to meet Sears's burden because it does not describe the content of the communications or establish such communications were about Toth's individual services.[8] See MVS Int'l Corp. , 2017 WL 4534331, at *9.
In its brief, Sears contends Epperson v. Mueller , No. 01-15-00231-CV, 2016 WL 4253978 (Tex. App.-Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.), is on point and compels affirmance. In Epperson , the plaintiff and defendant were both sellers of collectible memorabilia. Id. at *1. Epperson, the defendant, posted disparaging comments on an Internet forum for autograph collectors regarding the authenticity of Mueller's memorabilia. Id. Mueller sued, asserting claims for business disparagement and tortious interference with prospective relations. Id. Epperson moved to dismiss under the TCPA, but Mueller contended that the case was exempted from the act's protections because Epperson's statements involved commercial speech. Id. at *3, 6. The First Court of Appeals agreed with Mueller, holding that the commercial speech exemption applied because Epperson made the statements to an "intended audience ... of actual or potential buyers or customers," in order to promote sales of his own memorabilia. Id. at *11.
We find Epperson distinguishable from the present facts. As discussed above, Toth's inquiry of Langham, on its face, was not about Toth's goods or services. Accordingly, we disagree that this case "falls squarely within the language of the commercial exemption and in line with the Epperson analysis."
Viewing the record as a whole under the applicable standard of review, that is, making an "independent determination and apply[ing] the same standard used by the trial court in the first instance,"[9] we conclude that the TCPA's commercial speech exemption does not apply to Toth's statements. See Castleman , 546 S.W.3d at 690, 2018 WL 1975039, at *6 ; MacFarland , 2017 WL 1089684, at *9 ; Backes , 486 S.W.3d at 23 ; Kinney , 2014 WL 1432012, at *6-7. Accordingly, we sustain Toth's third issue, and turn to whether Sears met its burden of providing clear and specific evidence to support each element of its breach of contract claim against Toth. See Tex. Civ. Prac. & Rem. Code § 27.005(c).
D. Clear and specific prima facie evidence of breach of contract
To avoid mandatory dismissal, Sears was required to bring forth "clear and *157 specific evidence" establishing a prima facie case for each essential element of its breach of contract claim against Toth. Tex. Civ. Prac. & Rem. Code § 27.005(b), (c). The statute does not define "clear and specific," so we apply the ordinary meaning of those terms: "clear" means "unambiguous," "sure," or "free from doubt," and "specific" means "explicit" or "relating to a particular named thing." KTRK Television, Inc. v. Robinson , 409 S.W.3d 682, 689 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (citing Black's Law Dictionary 268, 1167 (8th ed. 2004) ). As the Supreme Court of Texas has explained, clear and specific evidence requires the plaintiff to "provide enough detail to show the factual basis for its claim." Bedford , 520 S.W.3d at 904 (internal quotation omitted).
"Prima facie evidence" is that "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." Lipsky , 460 S.W.3d at 590 (internal quotations omitted). A prima facie case may be established through circumstantial evidence. Id. at 591. However, conclusory statements are not probative evidence and accordingly will not suffice to establish a prima facie case. Better Bus. Bureau of Metro. Houston , 441 S.W.3d at 355 ; see also Lipsky , 460 S.W.3d at 592 (explaining that "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA").
To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. West v. Triple B. Servs., LLP , 264 S.W.3d 440, 446 (Tex. App.-Houston [14th Dist.] 2008, no pet.) ; see also Lesikar v. Moon , No. 14-16-00299-CV, 2017 WL 4930851, at *7 (Tex. App.-Houston [14th Dist.] Oct. 31, 2017, no pet.) (mem. op.). The last element encompasses a causation requirement. See Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship , 323 S.W.3d 203, 215 (Tex. App.-El Paso 2010, pet. denied).
Toth does not dispute that a valid contract existed or that Sears tendered performance. Rather, he challenges whether Sears presented evidence of Toth's alleged breaches and whether these breaches caused Sears injury.
Sears contends Toth breached the contract in the following ways: (1) Toth violated the confidential business information provision by having "continuous and unauthorized communications with Langham"; (2) Toth violated the confidential personal and business information provisions by "enter[ing] into a personal business transaction with Langham"; (3) Toth violated the contract by failing to "notify [Sears] of his unauthorized use of [Sears's] Confidential Business Information and [ ] Confidential Personal Information"; and (4) Toth violated the provision barring contractors from "solicit[ing], recommend[ing] or sell[ing] a non-authorized Sears product" by recommending Bostik.[10]
For argument's sake, we will assume that these alleged actions constitute breaches of the contract and that Sears produced clear and specific evidence to supports its allegations of breach. We nevertheless conclude that Sears did not provide *158 clear and specific prima facie evidence that Sears suffered an injury caused by Toth's alleged breaches.
In its response to Toth's motion to dismiss, Sears asserted that but for "Toth's interference into the claim resolution process between Langham and [Sears], [Sears] could have avoided having to defend against the lawsuit filed by Langham and incurring expenses or at the very least could have reached a quicker resolution of Langham's claims." But Sears did not cite any evidence to substantiate this contention. In its memorandum in support of its opposition to Toth's motion, Sears similarly asserted that "[i]t was foreseeable that [Sears] would not be able to resolve the claims with Langham if Toth was adamant that Langham's floor could be resolved with a specific product, the Bostik product, without [Sears's] permission," citing the entirety of an affidavit of its attorney, Jason Wagner. Wagner's affidavit provided, in part:
The communications and interactions between Winifred Langham and John Toth did complicate [Sears's] efforts to resolve Winifred Langham's claims. Correspondence with Winifred Langham's counsel at the time suggested that there were forces influencing Winifred Langham in [Sears's] efforts to resolve her claims and ultimately caused settlement discussions at that time to cease. John Toth was communicating with Winifred Langham about Sears Home Improvement Products, Inc.'s efforts to resolve her claim.
Wagner's assertion that Toth's "communications and interactions" with Langham "complicat[ed] [Sears's] efforts to resolve Winifred Langham's claims" is bare of any underlying facts illustrating how Toth's alleged conduct actually complicated settlement efforts. Thus, it is conclusory and not clear and specific evidence of any particularized harm. See Lipsky , 460 S.W.3d at 592-93 (general averment of economic losses and lost profits, without more, failed to satisfy the minimum requirements of the TCPA); Better Bus. Bureau of Metro. Houston , 441 S.W.3d at 355 (conclusory statements will not suffice to establish prima facie case). While Sears would have us infer that Toth's conduct was one of the "forces influencing Winifred Langham" to halt settlement discussions, we cannot reasonably do so in the absence of any specific evidence. Lipsky , 460 S.W.3d at 593 (citing Burbage v. Burbage , 447 S.W.3d 249, 262 (Tex. 2014) (noting that a jury could not reasonably infer that cancellations for a funeral home business were caused by defamation when any number of reasons could have caused the cancellations) ).
At bottom, all we have is Sears's conclusory allegation that Toth complicated Sears's efforts to settle Langham's claim. Sears did not attempt to quantify any measure of its purported damages or show with evidence how its settlement with Langham-including settlement consideration, defense costs, or other expenses-would have been different had Toth not breached the agreement by the conduct Sears alleges. Because there is no clear and specific evidence of any injury, we conclude that Sears did not establish a prima facie case of an essential element of its breach of contract claim against Toth. Id. at 591.
* * *
For the above reasons, we sustain Toth's second and fourth issues on appeal, and hold that the trial court erred in denying Toth's motion to dismiss.
E. Attorney's Fees and Expenses
Toth requested attorney's fees and sanctions in his motion to dismiss. When an action is properly dismissed under the TCPA, a trial court must award court *159 costs, reasonable attorney's fees, and other expenses incurred in defending against the action as justice and equity may require. Tex. Civ. Prac. & Rem. Code § 27.009(a)(1), (2) ; see also Sullivan v. Abraham , 488 S.W.3d 294, 299 (Tex. 2016). Because the record does not indicate that the trial court considered the sufficiency of Toth's affidavit on attorney's fees or otherwise weighed the evidence, we remand to the trial court to (1) award the amount of reasonable attorney's fees, costs, or expenses that justice and equity may require, and (2) impose sanctions, if any, sufficient to deter future similar conduct. Joselevitz , 524 S.W.3d at 865.
Conclusion
Having sustained Toth's issues on appeal, we reverse the trial court's order denying Toth's motion to dismiss under the TCPA and remand for proceedings consistent with this opinion.

See Tex. Civ. Prac. & Rem. Code §§ 27.001 et seq.

Toth was not involved in the initial installation of Langham's floor.

See Tex. Civ. Prac. & Rem. Code §§ 27.008(a), 51.014(a)(12) (authorizing interlocutory appeal of denial of Chapter 27 motion to dismiss).

Even if the plaintiff satisfies the second step, the court will nonetheless dismiss the action if the defendant " 'establishes by a preponderance of the evidence each essential element of a valid defense' to the plaintiff's claim." Coleman , 512 S.W.3d at 899 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(d) ).

Review of evidence outside the pleadings is not always necessary because, as the Supreme Court of Texas recently explained, when it is clear from a "holistic review" of the plaintiff's pleadings " 'that the action is covered by the Act, the defendant need show no more.' " Adams , 547 S.W.3d at 897, 2018 WL 1883075, at *5 (quoting Hersh v. Tatum , 526 S.W.3d 462, 467 (Tex. 2017) ).

It is undisputed that Langham was Sears's "actual customer."

To be sure, Toth did not make an assertion to Langham, but posed a question. We presume without deciding that Toth's inquiry to Langham regarding whether her floor issue was resolved constitutes the type of "statement" or "conduct" contemplated by section 27.010(b).

To the extent Sears bases its argument for the exemption on Langham's statements to Toth, including that she had filed a lawsuit against Sears, those communications are insufficient to support the exemption because they are not statements by Toth. See Tex. Civ. Prac. & Rem. Code § 27.010(b).

Fawcett , 498 S.W.3d at 656.

The information Sears considers "confidential" is "Langham's name, address, telephone number, email, flooring needs, flooring information, contract price and terms, payment history, and other detailed information relating to the Langham service file."