

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00340-CV

———————————————

VETMOVES, MOVES TEXAS, PLLC, AND DR. ROBYN READ, Appellants

V.

LONE STAR VETERINARIAN MOBILE SURGICAL SPECIALISTS, PC AND
CHARISSE DAVIDSON, Appellees

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2019-01801

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This is an accelerated interlocutory appeal from the denial of a motion to dismiss under the Texas Citizens Participation Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, 27.008(b), 51.014(a)(12). Appellees Dr. Charisse Davidson and Lone Star Veterinarian Mobile Surgical Specialists, PC, (collectively, Plaintiffs) sued Appellants Dr. Robyn Read, VetMoves, and Moves Texas, PLLC (collectively, Defendants) for defamation and related claims. Defendants filed a motion to dismiss Plaintiffs' claims under the TCPA, and Plaintiffs filed a response raising the TCPA's commercial speech exemption. The trial court denied the motion. In two issues, Defendants challenge the applicability of the TCPA's commercial speech exemption. We affirm.

**Background**

In Plaintiffs' petition, they alleged the following facts.[1] Defendants and Plaintiffs provide specialty veterinarian services to referring veterinarians; Dr. Davidson and Dr. Read are both veterinary surgeons, and VetMoves, Moves Texas,[2] and Lone Star are all businesses that provide mobile veterinary surgical services. In June 2018, Dr. Read began contacting referral veterinarians who conduct business

---

[1]As always when we uphold a trial court's denial of a TCPA motion, our disposition of this case is not a comment on the merits of Plaintiffs' claims.

[2] According to Dr. Davidson's affidavit attached to Plaintiffs' petition, VetMoves is a national mobile veterinary surgical company, and Moves Texas, PLLC is its Texas Branch.

with Plaintiffs. Although Dr. Read has never been employed by or associated with Plaintiffs, she represented herself to these referral veterinarians as an associate of, or relief vet for, Plaintiffs. Dr. Read falsely advised those referral veterinarians that Plaintiffs had made major surgical mistakes and that state board complaints had been filed against them, and she solicited business from those referral veterinarians for herself. Plaintiffs alleged that Dr. Read made these statements for the sole purpose of inducing Plaintiffs' clients to use Defendants rather than Plaintiffs for veterinary surgical services. Based on these alleged facts, Plaintiffs sued Defendants for fraud, negligent misrepresentation, tortious interference with existing business relationships, slander, disparagement, and conspiracy. In an attached affidavit, Dr. Davidson described losing several clients to Dr. Read because of Dr. Read's statements to those clients.

Defendants filed a motion to dismiss under the TCPA. In the motion, Defendants denied that Dr. Read told anyone that she is Dr. Davidson's associate and denied ever contacting anyone for the purpose of advising them that Dr. Davidson or Lone Star made major surgical mistakes or had received board complaints against them. Defendants acknowledged that Dr. Read had made statements about Dr. Davidson's services but contended that she did so only after being asked for her opinion during a consultation. They asserted that in May 2019, two staff veterinarians at Mazie's Mission asked Dr. Read to review some X-rays and consult with them on the work of another veterinarian. Dr. Read provided the requested consultation for

3

free. After Dr. Read gave her opinion, the two staff veterinarians, Dr. Schultz and Dr. Carroll, asked if she had heard other providers express frustration over Dr. Davidson's failure or delay in providing similar consultations. Dr. Read replied that she had heard similar comments, and she also told them that she had performed a consultation on another case for a surgery that Dr. Davidson had performed and, in her opinion, Dr. Davidson's work in that case was substandard. She told them that the pet owners in that case were considering filing a complaint with the Texas Board of Veterinary Medical Examiners. Defendants argued Dr. Read's statements to Dr. Schultz and Dr. Carroll were protected free speech regarding services in the marketplace and, as such, the TCPA applied.

Plaintiffs filed a response to the motion that did not dispute that the statements were communications on a matter of public concern or that Defendants had met their burden to show the TCPA's applicability. However, they asserted that Defendants' TCPA motion showed that the statements at issue arose out of the sale or lease of goods or services and that the intended audience of the statements were actual or potential buyers or customers of Plaintiffs and that therefore the TCPA's commercial speech exemption applied. The trial court denied Defendants' TCPA motion.

## Discussion

### I. The TCPA does not protect commercial speech.

The TCPA provides a mechanism for dismissal of a legal action that is based on, relates to, or in response to a defendant's exercise of the right of free speech.

4

*Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). However, the TCPA exempts commercial speech from its application. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2)). Section 27.010 provides that the TCPA does not apply to a claim against a person who is "primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *Id.* Four conditions must be met for the commercial speech exemption to apply:

> (1) the defendant was primarily engaged in the business of selling or leasing goods [or services], (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *Bejarano v. Dorgan*, No. 03-19-00182-CV, 2019 WL 4458798, at *2 (Tex. App.—Austin Sept. 18, 2019, no pet.) (mem. op.). In two issues, Defendants challenge the second and third conditions: whether their alleged communications arose out of or proposed a commercial transaction and whether the alleged communications were made in their capacity as a seller of their mobile veterinary surgical services.

## II. The trial court could review evidence on the third *Castleman* factor.

Plaintiffs' arguments in their response did not fully address the requirements of the commercial speech exemption. As Defendants point out, the motion "failed entirely to address the third *Castleman* exemption factor, [which] requir[es] that the communication arise out of an actual or proposed commercial transaction."[3] *See Castleman*, 546 S.W.3d at 688. Defendants contend that "[t]he failure to address this required factor in the trial court below precluded the [Plaintiffs] from satisfying their burden to establish that the commercial speech exemption applies and required the trial court to grant" their dismissal motion.

However, Plaintiffs clearly raised the issue of the exemption's applicability and, for the reasons discussed herein, their petition established the challenged elements of the exemption. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018) (noting that the movant had raised as an issue in the trial court that he was entitled to dismissal under the TCPA because the claim against him was based on his speech about a matter of public concern and holding that the movant did not have to argue all subparts of the definition of "matter of public concern" to preserve appellate argument as to all subparts). Because Plaintiffs raised the issue of the commercial speech exemption, the trial court was required to review the relevant pleadings and evidence to determine the exemption's applicability. *See id.*

---

[3] Plaintiffs also did not specifically assert that the intended audience was Appellants' actual or potential customer, but their petition established that element.

6

**III.** **The commercial transaction exemption applies to the alleged communications.**

Plaintiffs had the burden to establish by a preponderance of the evidence the commercial speech exemption's applicability.[4] *See Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet. denied); *Forget About It, Inc.*, 585 S.W.3d at 68; *see also Ray*, 2019 WL 6606170, at *4. In determining whether the commercial speech exemption applies, we look at the communications on which the challenged claim is based. *See The Pinkerton Law Firm, PLLC v. Univ. Cancer Ctr., Inc.*, No. 01-19-00089-CV, 2020 WL 97173, at *5 (Tex. App.—Houston [1st Dist.] Jan. 9, 2020, no pet. h.) (mem. op.). We start with Plaintiffs' pleadings, and we assume that Dr. Read made the statements alleged therein. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *Morrison v. Profanchik*, 578 S.W.3d 676, 683 (Tex. App.—Austin 2019, no pet.). Defendants do not dispute that Plaintiffs established that Defendants are primarily engaged in the business of selling veterinary surgical

---

[4]The TCPA does not state by what standard a proponent of an exemption must prove the exemption, but several courts of appeals, including this one, have applied the preponderance standard. *See Hawkins v. Fox Corp. Hous., LLC*, No. 01-19-00394-CV, 2020 WL 425121, at *3 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, no pet. h.); *Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 68 (Tex. App.—Dallas 2019, pet. denied); *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *5 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (noting that a TCPA motion is a matter involving civil litigation to which the preponderance of the evidence standard typically applies and stating that establishing the commercial speech exemption "should demand the same burden").

services or that the intended audience of the alleged statements were Defendants' actual or potential customers for the kind of goods or services that they provide.

Plaintiffs alleged in their petition that Defendants provide mobile veterinary services, that Dr. Read contacted Plaintiffs' clients and made the alleged statements "in the regular course of business and acting on behalf of Defendants VetMoves and Moves Texas, PLLC" while purporting to be affiliated with Plaintiffs, and that in those contacts she solicited the clients for her own business. Plaintiffs' petition thus alleged facts to show that Dr. Read made the statements in her capacity as a seller of veterinary surgical services in a series of conversations in order to pursue business for Defendants. Plaintiffs thus met their burden to satisfy the second and third factors of the commercial speech exemption. *See Clean Energy v. Trillium Transp. Fuels, LLC*, No. 05-18-01228-CV, 2019 WL 3212145, at *4–6 (Tex. App.—Dallas July 9, 2019, no pet.) (mem. op.).

To persuade us that the commercial speech exemption does not apply, Defendants point to their own contradictory evidence of what Dr. Read said about Dr. Davidson and in what context, evidenced by their TCPA motion and Dr. Read's affidavit. However, the petition alone satisfies the exemption's application. *See Hersh*, 526 S.W.3d at 467 (stating that the plaintiff's petition is the best and all-sufficient evidence of the nature of the plaintiff's action); *Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2020 WL 826729, at *16 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet. h.) (op. on reh'g en banc) ("[T]he factual allegations contained in the

8

pleadings may alone be sufficient to demonstrate that the nature of the claims is such that the claims are statutorily exempt without need of additional proof.").

Defendants argue that Dr. Read's alleged statements criticizing Dr. Davidson's work and relaying customer complaints and Dr. Read's statements that she was affiliated with Plaintiffs do not arise out of a commercial transaction. Defendants further assert in their reply brief that "Dr. Read's alleged statements about the [Plaintiffs] are not subject to the commercial speech exemption unless they were accompanied by Dr. Read's attempt to sell something." Defendants base their argument on language in *Castleman* that the commercial speech exemption applies to "communications made not as a protected exercise of free speech by an individual, but as commercial speech which does no more than propose a commercial transaction." *Castleman*, 546 S.W.3d at 690 (citations and internal quotation marks omitted). They further argue that "[s]peech critical of a competitor's product or service is not subject to the commercial speech exemption unless the speaker also tries to sell her own product or service based on that criticism."

To the extent that Defendants argue that under *Castleman*, the commercial speech exemption applies only when the defendant explicitly makes a detailed sales pitch, we disagree. *See Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex. App.—Austin May 4, 2018, pet. denied) (mem. op.). "[T]he exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue." *Clean Energy*, 2019 WL 3212145, at *4–

9

5; *cf. Sanders as Next Friend of Ejiofor v. Bansal*, No. 01-18-00508-CV, 2019 WL 7341660, at *5 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, pet. filed) (stating that *Castleman*'s "does no more than propose a commercial transaction" language "does not purport to refine the exemption's third requirement" that the statements arise out of a commercial transaction but instead "differentiates between speech directed to customers and speech directed elsewhere, as part of the analysis of the fourth requirement" that the intended audience of the statements be the defendant's actual or potential customers (citations and internal quotation marks omitted)). Here, the petition alleges that Dr. Read contacted Plaintiffs' customers and solicited those customers for herself by claiming an affiliation with Plaintiffs and telling the customers that Dr. Davidson had made major surgical mistakes. The statements at issue thus arose out of a commercial transaction. *See Rouzier v. Biote Med., LLC*, No. 05-19-00277-CV, 2019 WL 6242305, at *5 (Tex. App.—Dallas Nov. 22, 2019, no pet.) (mem. op.). The statements at issue thus satisfied the third condition for the exemption to apply.

Defendants further argue that the alleged statements were not made by Dr. Read in her capacity as a seller or lessor of her service because "[t]o the extent that Dr. Read successfully hoodwinked these veterinary clinics into believing she worked for the [Plaintiffs] (no such thing occurred), the result would be additional business **for the [Plaintiffs]**, not for Dr. Read" and as such the statements did not relate to Defendants' sale of goods or services. A defendant may establish the commercial

10

speech exemption as to some statements and not to others. *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 153 (Tex. App.—Houston [14th District] 2018, no pet.). However, we must consider the alleged statements in context. *See Rouzier*, 2019 WL 6242305, at *5 (evaluating whether commercial speech exemption applied by looking at the alleged statements in context); *cf. In re Office of the Att'y Gen. of Tex.*, 456 S.W.3d 153, 155 (Tex. 2015) ("When construing statutes, or anything else, one cannot divorce text from context."). Plaintiffs alleged that Dr. Read disparaged Dr. Davidson's work in the same conversations in which she claimed to be affiliated with Dr. Davidson. That is, Plaintiffs alleged that she targeted Plaintiffs' clients—specifically selected those clients because of their relationship with Plaintiffs—and used a claimed affiliation with Plaintiffs and allegations about Dr. Davidson's inferior work to persuade those clients to hire Defendants. *See Clean Energy*, 2019 WL 3212145, at *5 ("Thus, by emailing customers and implying that [the plaintiff] was overcharging and attempting to meet and 'start a conversation' about [the defendant]'s goods or services, [the defendant] proposed a commercial transaction and pursued business for itself with intention to profit from it.").

Defendants cite *Toth*, 557 S.W.3d at 154, and *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *6 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.), to support their argument that the statements or conduct at issue did not arise out of a commercial transaction. *Toth* is distinguishable. As noted by the Dallas court of appeals in *Rouzier*, the defendant's communications in *Toth* "were

11

merely about a good in the marketplace and not made in his capacity as a seller of that good or in an effort to market his own services *in competition with* the company for which he worked as an independent contractor." *Rouzier*, 2019 WL 6242305, at *5. Here, unlike in *Toth*, Plaintiffs identified statements and conduct by Defendants that described and promoted Defendants' business. *See Toth*, 557 S.W.3d at 154. *Dickens* also fails to persuade us against the exemption's application. In that case, the defendant, an attorney, made comments to a client about the quality of the services provided by the plaintiff, also an attorney, to a client they both represented. *See Dickens*, 2018 WL 6839568, at *6. As Defendants note in their reply brief, the *Dickens* opinion states, "For the exemption to apply, the defendant's statements or conduct must be about the defendant's goods or services, not the plaintiff's." *Dickens*, 2018 WL 6839568, at *6. Reading *Dickens*'s characterization of the exemption to mean that the alleged statements must be made in promoting or pursuing the defendant's business, we agree with it.[5] As the Dallas court of appeals has stated, "the

---

[5]The Dallas court has since explained that its *Dickens* opinion does not stand for the proposition that the commercial speech exemption applies only to specific statements discussing the defendant's business or that communications that discuss the plaintiff's services in an attempt to solicit business for the defendant may not be exempt from the TCPA. *Clean Energy*, 2019 WL 3212145, at *4–5. In *Clean Energy*, the Dallas court noted that although the emails at issue in the case "included information about [the plaintiff] and the alleged overpricing of its services, the intended goal of the emails was to persuade [the plaintiff's] customers and potential customers to terminate its contracts and allow [the defendant] an opportunity to bid on its goods and services." *Id.* at *4. The court discussed the emails on which the plaintiff based its claim—emails that discussed the plaintiff's pricing but not the defendant's—and noted that the emails "certainly involve the kind of goods and

12

exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue." *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.). Here, Plaintiffs pled that Dr. Read made disparaging comments about Dr. Davidson's services in the same conversation in which Dr. Read promoted her own services and that she made those disparaging comments for the purpose of soliciting Plaintiffs' clients for Defendants.

Plaintiffs met their burden to establish by a preponderance of the evidence that the commercial speech exemption applies. Accordingly, regardless of the merits of Plaintiffs' claims, the trial court correctly denied Defendants' motion to dismiss. We overrule Defendants' two issues.

## Conclusion

Having overruled the two issues raised by Dr. Read, VetMoves, and Moves Texas, we affirm the trial court's denial of the TCPA motion.

---

services [that the defendant] provides," that [the defendant] "sent unsolicited emails to [the plaintiff's] customers, indicated [the plaintiff's] prices were too high, and attempted to meet with [the plaintiff's] customers to 'present our renewable CNG offering and support services' and discuss 'what we could do today.'" The court held that "[t]he fact that the emails do not provide specific details about [the defendant]'s pricing or business proposal does not mean the emails are not about [the defendant]'s goods and services" and that "[b]ecause part of [the defendant]'s communications involves its goods and services, *Dickens* is distinguishable and does not control the outcome under these facts." *Id.* at *5.

/s/ Mike Wallach

Mike Wallach

Justice

Delivered:  April 16, 2020