**Opinion filed March 26, 2020**



### In The

# Eleventh Court of Appeals

_____

## No. 11-19-00287-CV

_____

## LOZOYA CONSTRUCTION, INC., Appellant

## V.

## H&E EQUIPMENT SERVICES, INC., Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV55629**

### M E M O R A N D U M   O P I N I O N

Pursuant to a written contract, Lozoya Construction, Inc. agreed to perform certain work at H&E Equipment Services, Inc.'s facility in Midland. H&E was dissatisfied with the work and sued Lozoya for breach of contract, breach of implied warranty of good and workmanlike manner, negligence, negligent misrepresentation, and fraud.[1] Lozoya moved to dismiss these claims pursuant to

---

[1]H&E also asserted claims against Lozoya for suit on a sworn account, breach of contract, and quantum meruit based on Lozoya's failure to pay the rental charges for certain equipment. Lozoya did not move to dismiss those claims.

the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA).[2] The trial court denied Lozoya's motion to dismiss, determined that the motion was frivolous and intended to delay, and awarded H&E attorney's fees.

In eight issues, Lozoya contends that the trial court erred when it considered the factual allegations in H&E's response and conclusory allegations in H&E's response and pleadings as evidence, determined that the TCPA did not apply to H&E's claims and that H&E established by clear and specific evidence a prima facie case for each essential element of its claims, found that the commercial speech exemption in the statute applies to H&E's claims, awarded H&E attorney's fees, and failed to award Lozoya attorney's fees and sanctions. We hold that the trial court did not err when it (1) denied the motion to dismiss based on the commercial speech exemption and (2) found that H&E was entitled to recover the attorney's fees that it incurred to respond to the motion. Because the evidence is insufficient to support the amount of attorney's fees awarded by the trial court, we reverse the trial court's award of attorney's fees in the amount of $9,360 and remand the issue of the amount of attorney's fees to be awarded to H&E to the trial court for further proceedings. We affirm the trial court's order in all other respects.

*Background*

Pursuant to a written contract, Lozoya agreed to perform site work and concrete installation at H&E's facility in Midland. Among other work, Lozoya was required to install an 8,250 square foot concrete slab and approximately 28,196

---

[2]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010 (West Supp. 2019)). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before September 1 applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

square feet of three-inch asphalt. The contract specified that the concrete was to be "8 [inch] 4000 psi concrete with fiber." H&E agreed to pay Lozoya $296,078.68 for all the work under the contract, with half of the money to be paid before Lozoya started the work and the other half to be paid "upon completion and final walkthrough." H&E and Lozoya signed a second contract that required Lozoya to "[s]ervice blade" and lay caliche over 4.78 acres of the property and to install twelve pipe bollards. H&E agreed to pay $81,870 for this work.

Lozoya purchased concrete that contained micro reinforcement fiber from PB Materials, LLC to use on the project. It also purchased the asphalt for the project from APM Contractor Services, LLC.

After Lozoya completed the work, H&E filed this suit. In its first amended petition, H&E alleged that the parties agreed that Lozoya would use macro reinforcement fiber in the concrete. H&E pleaded that, due to Lozoya's use of micro reinforcement fiber, there had been "a considerable amount of cracking in the concrete slab that requires immediate removal and replacement." H&E also alleged that the contract required Lozoya "to install the asphalt to be three inches thick through the entire concept." H&E asserted that Lozoya "installed the asphalt in a manner that is inconsistent with the three-inch thickness" and that the asphalt "is of substandard strength and starting to crack."

As relevant to this appeal, H&E asserted claims against Lozoya for the following: (1) breach of contract based on Lozoya's failure to provide concrete with the correct reinforcement fiber and to install the asphalt to the contracted-for thickness; (2) breach of the implied warranty of good and workmanlike manner based on Lozoya's failure to ensure that its services were performed in a skillful and workmanlike manner; (3) negligence; (4) negligent misrepresentation; and (5) fraud. H&E specifically alleged that Lozoya made material misrepresentations about the

3

type of reinforcement fiber that would be included in the concrete mix and about the thickness of the asphalt.

In its answer and counterclaim, Lozoya asserted that it supplied H&E with "certain goods or services" as shown by the two contracts and that H&E was required to pay for the goods or services. Lozoya stated that the prices that it charged to H&E were "usual, customary, or reasonable prices" and "were the same prices charged to any other customer for the same goods and service at that time in Midland County." Lozoya pleaded that H&E failed to pay for the goods and services and sought to recover $229,909.34 based on a sworn account, breach of contract, quantum meruit, and the Texas Prompt Pay Act, TEX. PROP. CODE ANN. §§ 28.001–.010 (West 2014).

Lozoya filed a TCPA motion to dismiss H&E's claims. Lozoya asserted that H&E's claims were based on, related to, or in response to Lozoya's exercise of the right of free speech. Lozoya specifically alleged that the statements about "the materials and qualities of the concrete work it had completed" for H&E were made in connection with a matter of public concern. Lozoya further contended that H&E could not meet its burden to establish a prima facie case for each essential element of its claims.

In conjunction with its motion to dismiss, Lozoya filed the affidavit of its CEO, Filiberto I. Lozoya, Jr. Filiberto stated that Lozoya and H&E entered into two contracts. As relevant here, the first contract required Lozoya to install approximately 28,196 square feet of three-inch asphalt and "8,250 square feet of 8-inch 4000 psi concrete with fiber." The second contract required Lozoya to install a layer of caliche over 4.78 acres of the site and to install twelve pipe bollards. Filiberto attached both contracts to his affidavit.

Filiberto confirmed that H&E agreed to pay Lozoya $296,078.68 for the work under the first contract and $81,870 for the work under the second contract. However, because of the development of cracks in the concrete, H&E paid only fifty

4

percent of the amount due on the first contract and none of the amount due on the second contract. Filiberto stated that he had "over 10 years' experience in the construction industry" and had "been involved with and/or supervised hundreds of projects involving site work including the type of work completed for H&E." In Filiberto's experience, "substantially all concrete will develop some cracks after it cures," but "the cracks do not determine the integrity of the concrete."

Filiberto asserted that Lozoya made "a number of representations" that related "to safety, the economic well-being, the community well-being, and/or a good, product, or service in the marketplace"; that all the communications were true; and that Lozoya satisfied "all requirements expressed in the communications." Filiberto specifically stated that, while Lozoya was contractually required to use "fiber" in the concrete, it was not obligated to use "macro" fiber. Finally, Filiberto stated that Lozoya obtained the asphalt for the project from APM and that "the documents" established that Lozoya installed 28,196 square feet of three-inch asphalt. Filiberto attached to his affidavit an invoice from APM for 28,196 square feet of asphalt and a "Bill Payment Stub" that reflected that Lozoya paid APM for the asphalt.

Lozoya also filed an affidavit from Jerry Garcia, who was Lozoya's vice president at the time of the proposal to H&E, that was virtually identical to Filiberto's affidavit. Although Garcia did not state how many years of experience that he had in the construction industry, he indicated that he had "been involved with and/or supervised hundreds of projects involving site work including the type of work completed for H&E." Garcia offered the same opinions as Filiberto about the integrity of the concrete. Along with the contracts and documents from APM, Garcia attached to his affidavit pictures of the concrete at H&E's facility.

H&E filed a response to the motion to dismiss in which it argued that Lozoya had failed to establish that the TCPA applied to H&E's claims, that H&E's claims were exempt from the TCPA under the commercial speech exemption in the statute,

5

and that it had established by clear and specific evidence a prima facie case for each essential element of its claims. H&E also asserted that Lozoya's motion was frivolous and/or solely intended to delay because Lozoya's statements "clearly fall under the commercial speech exemption."

H&E attached the affidavit of Cliff McNeel, H&E's director of facilities, to its response. McNeel stated that, in connection with Lozoya's proposal to do the site work at H&E's facility, he had several conversations with Garcia about the specifications that H&E required for the concrete slab. Garcia sent a proposal that indicated that reinforcement fiber would be added to the concrete mix. McNeel told Garcia that H&E required that macro reinforcement fiber, not the alternative micro reinforcement fiber, be used for the slab. Garcia represented to McNeel that macro reinforcement fiber would be included in the concrete mix. McNeel e-mailed Garcia the specifications for the concrete mix that H&E used on another project, and Garcia provided an updated proposal.

According to McNeel, after Lozoya installed and constructed the concrete slab, employees at the Midland facility told him that there was a considerable amount of cracks in the concrete. McNeel inspected Lozoya's work and determined that Lozoya did not use concrete with macro reinforcement fiber. A representative from Lozoya gave McNeel "trip tickets" that reflected that the batch plant, which provided the concrete, used micro fiber in the mix.

McNeel attached to his affidavit e-mails to and from Garcia about Lozoya's proposal to do the site work at H&E's facility. In one of those e-mails, McNeel provided Garcia with the specifications for concrete work at H&E's Hutto facility that included macro reinforcement fiber. McNeel also attached the contract and the trip tickets from PB Materials to his affidavit.

6

The trial court denied Lozoya's motion to dismiss without stating a basis for the ruling, found that the motion was frivolous and intended to delay, and awarded H&E attorney's fees in the amount of $9,360.

*Analysis*

The TCPA provides a summary procedure to dismiss a legal action that is based on, related to, or in response to a party's exercise of the right of free speech, the right of association, or the right to petition. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *In re Lipsky*, 460 S.W.3d 579, 589–90 (Tex. 2015) (orig. proceeding). However, Section 27.010 of the Civil Practice and Remedies Code exempts certain types of legal actions from the TCPA. CIV. PRAC. & REM. § 27.010; *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that, if a statutory exemption applies, the movant "cannot invoke the TCPA's protections"). As relevant in this case, the TCPA does not apply to a legal action based on commercial speech. CIV. PRAC. & REM. § 27.010(b). Because the trial court's order can be affirmed based on the application of the commercial speech exemption, we will address Lozoya's fifth issue first.

The TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or . . . a commercial transaction in which the intended audience is an actual or potential buyer or customer." *Id.* The commercial speech exemption applies only to certain communications that are "made not as a protected exercise of free speech by an individual, but as 'commercial speech which does "no more than propose a commercial transaction."'" *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 (Tex. 2018) (per curiam) (quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.*, 478 U.S. 328, 340 (1986)). The commercial speech exemption applies when (1) the movant was primarily engaged in the business of selling or leasing goods or services,

(2) the movant made the statement or engaged in the conduct on which the claim is based in the movant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction that involved the kind of goods or services that the movant provides, and (4) the intended audience of the statement or conduct was an actual or potential customer of the movant for the kind of goods or services that the movant provides. *Id.* at 688; *see also* CIV. PRAC. & REM. § 27.010(b).

The party that relies on the commercial speech exemption has the burden to prove these elements by a preponderance of the evidence. *Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 68 (Tex. App.—Dallas 2019, pet. denied). When we review whether the nonmovant met its burden, we consider the pleadings and any supporting affidavits. CIV. PRAC. & REM. § 27.006(a); *Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2020 WL 826729, at *16 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet. h.) (en banc). "[T]he factual allegations contained in the pleadings may alone be sufficient to demonstrate that the nature of the claims is such that the claims are statutorily exempt without need of additional proof." *Gaskamp*, 2020 WL 826729, at *16; *see also Rouzier v. BioTE Med., LLC*, No. 05-19-00277-CV, 2019 WL 6242305, at *4 (Tex. App.—Dallas Nov. 22, 2019, no pet. h.) (mem. op.) ("[A]n affirmative allegation of facts, with no contrary evidence or denial of those facts, is sufficient to satisfy the elements of the commercial speech exemption.").

The first element of the *Castleman* test requires that Lozoya be primarily engaged in the business of selling or leasing goods or services. *See Castleman*, 546 S.W.3d at 688. H&E pleaded in its first amended petition that Lozoya contractually agreed to "construct the site work and concrete installation" at H&E's facility in Midland. That work included the installation of an 8,250 square foot concrete slab and over 28,000 square feet of asphalt. In its answer, Lozoya acknowledged that it

8

provided the "goods or services" set out in the contract to H&E. Lozoya also pleaded that the prices that it charged to H&E for the "goods and services" were the same prices that it charged to any other customer for the same goods and services. Therefore, Lozoya's pleadings reflect that it provided the same "goods and services" that it provided to H&E to more than one customer.

Filiberto, Lozoya's CEO, and Garcia, Lozoya's vice president at the time of the proposal to H&E, had "been involved with and/or supervised hundreds of projects involving site work including the type of work completed for H&E." Filiberto also acknowledged that he personally had "over 10 years' experience in the construction industry." On behalf of Lozoya, Garcia prepared a proposal for the site work and concrete installation at H&E's facility. McNeel and Garcia discussed Lozoya's proposal and the required specifications for the concrete included in the proposal, and Garcia then revised the proposal. Under these circumstances, it is reasonable to conclude that Lozoya was primarily engaged in the same business as its officers. *See Rose v. Sci. Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *5 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (holding that it was a logical conclusion that operations manager of company was necessarily "primarily engaged" in the same business as his employer).

H&E produced evidence through the parties' pleadings and the affidavits of McNeel, Filiberto, and Garcia that Lozoya was primarily engaged in the business of selling goods, including concrete and asphalt, and services in the construction industry. Lozoya did not deny that it was primarily engaged in the business of selling goods and services in the construction industry and produced no contrary evidence. *See Rouzier*, 2019 WL 6242305, at *4.

The second *Castleman* element requires that Lozoya made the complained-about statements in its capacity as a seller of those goods or services. *Castleman*, 546 S.W.3d at 688. On this element, we consider the context of the statements to

9

determine whether the statements proposed a commercial transaction. *Hawkins v. Fox Corp. Housing, LLC*, No. 01-19-00394-CV, 2020 WL 425121, at *4 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, no pet. h.). A party makes a statement in its capacity as a seller of goods or services when the statement is made to further the party's business or to secure sales. *See Gaskamp*, 2020 WL 826729, at *17 (concluding that TCPA movants engaged in the complained-about conduct in their capacity as sellers of services because the conduct occurred in the context of furthering business for the purpose of securing sales); *Bejarano v. Dorgan*, No. 03-19-00182-CV, 2019 WL 4458798, at *3 (Tex. App.—Austin Sept. 18, 2019, no pet.) (mem. op.) (concluding that second *Castleman* element is established where the statement was made "for the purpose of securing sales in the goods or services of the person making the statement" (quoting *Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied))).

H&E pleaded and produced evidence that Lozoya proposed to complete the site work at H&E's facility and that, during the proposal process, Lozoya represented that the concrete that it offered to supply to H&E would contain macro fiber and that the asphalt that it offered to supply to H&E would be three inches thick. The contract that the parties signed required Lozoya to install approximately 28,196 square feet of three-inch asphalt and 8,250 square feet of eight-inch, 4000 psi concrete "with fiber." H&E agreed to pay Lozoya for its work.

The pleadings and the evidence establish that Lozoya made the complained-about statements in its pursuit of business or sales and that it stood to profit from those sales. Therefore, Lozoya made the statements in its capacity as a seller of concrete and asphalt or as a seller of its services to install the concrete and asphalt.

The third *Castleman* element, that the complained-about statements arise out of a commercial transaction that involves the kind of goods or services that Lozoya provides, is closely related to the second element. *See Castleman*, 546 S.W.3d at

688; *Gaskamp*, 2019 WL 826728, at *17. For purposes of this factor, the sale or lease of goods or services refers to the defendant's sale or lease of goods or services. *Castleman*, 546 S.W.3d at 688. The third element is satisfied by evidence that the movant "pursued business for itself and stood to profit from it." *Bejarano*, 2019 WL 4458798, at *3 (quoting *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.)). As set out above, the pleadings and the evidence established that Lozoya made the complained-about statements when it proposed to sell goods—concrete and asphalt—and installation services for its own profit.

Lozoya, however, argues that, because it ultimately provided neither the concrete nor the asphalt, its statements were not about its goods. In support of its argument, Lozoya points to cases that have held that statements about another person's goods or services do not fall within the commercial speech exemption. *See Toth v. Sears Home Improvement Prods.*, 557 S.W.3d 142, 154–55 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding that the movant's statements about a product that he did not sell and that were not made to promote the movant's personal business were not commercial speech); *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *3–4 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.) (concluding that commercial speech exemption did not apply to the movant's communications about the nonmovants' business where the communications were directed to the general public and not to the movant's customers); *Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *6–7 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (noting that, for the commercial exemption to apply, the communication "must be made for the purpose of securing sales in the goods or services of the person making the statement" and that an anonymous statement about the nonmovant's business that made no reference to the movant's business was not commercial speech). However,

none of the cases relied upon by Lozoya address the situation in which a party who is selling goods or services makes statements about a good that it intends to supply through a subcontract with a third party.

We question whether Lozoya's choice to use another entity to supply the goods that Lozoya sold insulates Lozoya's statements from the commercial speech exemption. However, we need not address that question because the pleadings and the evidence clearly established that, at the time that Lozoya made the complained-about statements, Lozoya sought to sell its own services to provide and install the concrete and asphalt.

The final *Castleman* element requires that the intended audience of the statement or conduct be an actual or potential customer of Lozoya for the kind of goods or services that Lozoya provides. *See Castleman*, 546 S.W.3d at 688. The pleadings and evidence established that Lozoya made the communications to H&E and that H&E was an actual or potential customer of Lozoya's goods or services.

We hold that H&E's claims, which are based on statements made by Lozoya as part of its proposal to perform site work at H&E's facility, fall within the commercial speech exemption. Because the exemption applies, Lozoya could not invoke the protections of the TCPA, *see Harper*, 562 S.W.3d at 11, and the trial court did not err when it denied Lozoya's motion to dismiss. We overrule Lozoya's fifth issue.

Because we have considered only the factual statements in the pleadings, the affidavits, and the documents attached to the affidavits, we need not address Lozoya's first two issues in which it argues that the trial court erred when it considered factual allegations in H&E's response to the motion to dismiss and conclusory allegations in H&E's response and pleadings. *See* TEX. R. APP. P. 47.1. Further, because H&E's claims fall within the commercial speech exemption, we need not consider Lozoya's third and fourth issues in which it complains that the

12

trial court erred when it determined that Lozoya was not engaged in the exercise of its right to free speech when it made the statements and that H&E established by clear and specific evidence a prima facie case for each essential element of its claims. *See id.*

In its sixth, seventh, and eighth issues, Lozoya argues that the trial court erred when it (1) determined that the motion to dismiss was frivolous and intended to delay, (2) awarded attorney's fees to H&E, and (3) failed to award attorney's fees and sanctions to Lozoya. "We review the trial court's decision to award attorney's fees under the TCPA for an abuse of discretion." *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 242 (Tex. App.—Eastland 2019, no pet.); *see also Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). "A trial court abuses its discretion when it acts arbitrarily or unreasonably or without regard to guiding principles." *Caliber Oil & Gas*, 591 S.W.3d at 242–43; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

In its eighth issue, Lozoya complains that the trial court erred when it failed to award Lozoya attorney's fees and sanctions. If a trial court grants a motion to dismiss under the TCPA, it is required to award the movant (1) court costs, reasonable attorney's fees, and other expenses incurred to defend the action as justice and equity may require and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party from bringing similar actions. CIV. PRAC. & REM. § 27.009(a). As discussed above, the trial court did not err when it denied Lozoya's motion to dismiss; therefore, Lozoya was not entitled to an award of attorney's fees and sanctions. We overrule Lozoya's eighth issue.

In its sixth and seventh issues, Lozoya contends that the trial court erred when it awarded H&E attorney's fees. "[T]o secure an award of attorney's fees from an opponent, the prevailing party must prove that: (1) recovery of attorney's fees is

13

legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). Lozoya asserts that H&E failed to establish either prong.

The TCPA authorizes a trial court to award costs and reasonable attorney's fees to the nonmovant if the motion to dismiss was frivolous or solely intended to delay. CIV. PRAC. & REM. § 27.009(b). The trial court found that Lozoya's motion was "frivolous and intended to delay." Lozoya contends that the evidence is insufficient to support either finding.

A motion to dismiss is frivolous if it does not have a basis in law or in fact and lacks a legal basis or legal merit. *Caliber Oil & Gas*, 591 S.W.3d at 243. Lozoya contends that the evidence is insufficient to support the trial court's determination that the motion was frivolous because (1) H&E argued only that the motion was frivolous based on the commercial speech exemption and (2) Lozoya "[did] not have to prove anything on the exemption until the party claiming the exemption ha[d] met their burden." Lozoya essentially argues that a motion to dismiss can never be frivolous if it is denied based on the application of the commercial speech exemption.

We agree that H&E had the burden to prove that the commercial speech exemption applied. However, it is equally true that, as the movant, Lozoya had a duty, before it filed the motion, to evaluate whether it had a right to invoke the protections of the TCPA. *See Harper*, 562 S.W.3d at 11; *Caliber Oil & Gas*, 591 S.W.3d at 243. We have determined that Lozoya was not entitled to the protections of the TCPA because Lozoya's statements constituted commercial speech. Much of the evidence that establishes that Lozoya was engaged in commercial speech comes from e-mails written by Lozoya's vice president and affidavits from Lozoya's CEO

14

and vice president. Lozoya, therefore, had no basis in fact to support its position that it had a right to invoke the protections of the statute.

If it had performed an evaluation of H&E's claims, Lozoya also would have determined that the motion to dismiss had no basis in law. Lozoya's primary legal argument as to why the commercial speech exemption did not apply to H&E's claims was that PB Materials supplied the concrete and APM supplied the asphalt and that Lozoya's statements, therefore, were not about its own goods. Lozoya cited no authority to support the proposition that its statements about a good that it proposed to sell did not constitute commercial speech simply because it chose to hire a subcontractor to supply the good. Lozoya also failed to address that, regardless of what company actually provided the concrete and asphalt, Lozoya made the statements when it proposed to sell its services to supply and install those goods.

We stress that the fact that the commercial speech exemption applies is not sufficient, in and of itself, to support a finding that a motion to dismiss is frivolous. However, we cannot conclude that a trial court abuses its discretion when it finds that a motion to dismiss is frivolous when the record shows (1) that the movant's pleadings and evidence establish that it was engaged in commercial speech, (2) that the movant cited no authority that supported its primary legal argument, and (3) that there is no indication that the movant performed any evaluation of the applicability of the TCPA before it filed the motion. Therefore, we hold that the trial court did not abuse its discretion when it determined that Lozoya's motion to dismiss was frivolous. Because the TCPA authorizes an award of attorney's fees to the nonmovant when a motion to dismiss is frivolous, we need not address whether the trial court erred when it determined that the motion to dismiss was intended to delay. *See* TEX. R. APP. P. 47.1. We overrule Lozoya's sixth issue.

In its seventh issue, Lozoya argues that the evidence is insufficient to support the amount of attorney's fees awarded to H&E. Texas uses the "lodestar method,"

15

which is essentially a "short hand version" of the *Arthur Anderson*[3] factors, to determine reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 496. Under the lodestar method, the factfinder must first determine the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The factfinder then multiplies the number of hours that counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–01.

It is the fee claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Id.* at 498. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing the services. *Id.*[4]

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, *Rohrmoos Venture*, 578 S.W.3d at 502, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees,

---

[3]*Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[4]The evidentiary standard is the same for attorney's fees awarded as a fee-shifting sanction. *See Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709–10 (Tex. 2019) (per curiam) ("Although this case deals with attorney's fees awarded through a sanctions order, the distinction is immaterial because all fee-shifting situations require reasonableness.").

16

*Long v. Griffin*, 442 S.W.3d 253, 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing and remanding to redetermine attorney's fees when attorney testified to the time expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks).

The only evidence to support the amount of attorney's fees awarded to H&E were two affidavits from its counsel, Matthew K. Joeckel. In the first affidavit, Joeckel stated that he was an associate of Fee, Smith, Sharp & Vitullo, LLP and was H&E's counsel in the case. According to Joeckel, H&E was charged attorney's fees of $240 an hour for the work done on the case. Joeckel divided the work into three categories: (1) seven hours to study the motion to dismiss, to evaluate the appropriate case law, and to draft a letter to opposing counsel, for which H&E was charged fees of $1,680; (2) twenty-three hours to review the motion to dismiss, to prepare and file the response to the motion, to create affidavits in support of the motion, and to identify supporting case law, for which H&E was charged $5,520; and (3) nine hours to prepare for and participate in the hearing on the motion, for which H&E would be charged $2,160. Joeckel did not explain the difference between "studying" and "reviewing" the motion to dismiss or between "evaluating" and "identifying" case law. Joeckel opined that H&E had incurred $9,360 for reasonable and necessary attorney's fees to respond to Lozoya's motion to dismiss.

In his second affidavit, Joeckel used the same categories as in his first affidavit to describe the work performed on the case. He increased the time spent to study the motion to dismiss, to evaluate the appropriate case law, and to draft a letter to opposing counsel to 8.8 hours, but decreased the billing rate for that time to $225 per hour. The total amount of fees for this block of work increased to $1,980. Joeckel also increased the amount of time spent to review the motion to dismiss, to prepare and file the response to the motion, to create affidavits in support of the

17

motion, and to identify supporting case law to 25.2 hours, but again decreased the billing rate to $225 per hour. The total fees charged for this work increased to $5,670. As to the attorney's fees to prepare for and participate in the hearing, Joeckel increased the time spent to 11.0 hours and included costs of $545.96 for a flight from Dallas to Midland, which increased the fees for this block of work to $3,020.96. Joeckel opined that H&E had incurred reasonable and necessary attorney's fees of $10,670.96 to respond to Lozoya's motion to dismiss.

Joeckel's affidavits are deficient in several respects. First, he did not segregate the total time between various tasks and, even if we assume that he is the only attorney who worked on the case, did not specify when he performed the work. Second, based on Joeckel's general description of the work performed, some of the work could be duplicative. Third, Joeckel did not explain the changes in the affidavits as to either the time spent on certain work or the hourly rate charged. Finally, Joeckel did not provide any billing records that could help explain these deficiencies. Joeckel's affidavits, therefore, lack "the substance required to uphold a fee award" and are insufficient. *See Rohrmoos Venture*, 578 S.W.3d at 505; *see also Nath*, 576 S.W.3d at 709–10.

We sustain Lozoya's seventh issue, reverse the trial court's award of $9,360 for attorney's fees, and remand the issue to the trial court for a redetermination of fees. *See El Apple*, 370 S.W.3d at 765 (concluding that, because record did not provide sufficient evidence to support discretionary award of attorney's fees under the Texas Commission on Human Rights Act, case should be remanded to the trial court for a redetermination of fees); *see also Rohrmoos Venture*, 578 S.W.3d at 505; *Long*, 442 S.W.3d at 256.

*This Court's Ruling*

We reverse that portion of the trial court's order in which it awarded H&E $9,360 for attorney's fees that it incurred to respond to Lozoya's motion to dismiss,

and we remand that issue to the trial court for a redetermination of the amount of attorney's fees that H&E is entitled to receive. We affirm the trial court's order in all other respects.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


March 26, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[5]

Willson, J., not participating.

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.