**Opinion issued April 21, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00497-CV

————————————

**BLAZE SALES & SERVICES, INC., TEXAS TOOLS & DISTRIBUTORS, INC., AKHIL SHARMA, RUPAK KUMAR JHA, ANKUSH YADAV, ABRIANNA BRITO AND PAUL ABAD, Appellants**

**V.**

**AMERICAN COMPLETION TOOLS, INC., Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-18213**

---

## MEMORANDUM OPINION

Appellee, American Completion Tools, Inc. (ACT), sued Appellants Blaze

Sales & Services, Inc., Texas Tools & Distributors, Inc., Akhil Sharma, Rupak

Kumar Jha, Ankush Yadav, Abrianna Brito, and Paul Abad for causes of action

including breach of contract, fraud, tortious interference, and misappropriation of trade secrets, among others. ACT asserted that Sharma, Jha, and Yadav were former employees of ACT's, that they engaged in various frauds and other actions in order to compete with ACT in selling tools for use in the oil and gas industry through their alter ego businesses, Blaze Sales and Texas Tools. Appellants moved to dismiss three of ACT's claims against them—claims for tortious interference with contracts, tortious interference with commercial relations, and misappropriate of trade secrets—pursuant to the Texas Citizens Participation Act (TCPA). The trial court denied Appellant's motion.

On appeal, Appellants argue in their first four issues that the trial court erred in denying their TCPA motion to dismiss because the TCPA applied to the challenged claims, and ACT failed to establish the application of an exemption or to prove a prima facie case as to each of the challenged causes of action. Appellants further argue in their fifth and sixth issues, respectively, that the trial court erred in denying them damages, costs, and sanctions under the TCPA, and in stating, in its denial order, that "discovery is no longer suspended in this matter." Because we conclude that ACT established that the commercial-speech exemption applies to its claims, we affirm.

**Background**

ACT is in the business of designing, manufacturing, and selling tools for use in the oil industry. According to its pleadings, ACT "manufactures many of its own products and distributes products manufactured by a company related to ACT— foreign manufacturer Parveen Industries PVT. LTD. ('Parveen')." ACT also held several licenses from the American Petroleum Institute (API), which it described as "a national trade association representing all facets of the natural gas and oil industry." ACT described the API licenses—which included "monogram licenses" and "a license for API's Quality Registrar Program showing that ACT's products meet industry-written standards and globally-accepted management system specifications"—as "prestigious" and noted that one monogram license in particular "was one of only 40 issued by the API in the entire United States."

Appellants Akhil Sharma, Rupak Jha, and Ankush Yadav are former employees of ACT. Appellants Blaze Sales and Texas Tools are businesses that also sell tools for use in the oil industry. Appellant Brito is a principal of Blaze Sales, and Appellant Abad is a principal of Texas Tools. ACT alleges that all the Appellants are alter egos of each other, and ACT alleges that its former employees Sharma, Jha, and Yadav worked on behalf of Blaze Sales and Texas Tools both during and after their employment with ACT.

During his employment with ACT, Sharma "communicat[ed] with existing and new customers and facilitate[ed] sales of products." Jha's duties at ACT included "assisting existing and new customers in product selection and development of new product ideas," and ACT eventually promoted him to Facility Head over the operations warehouse in Houston. Yadav worked as an intern for ACT and had access to ACT's customer lists, warehoused inventory, and facilities.

Sharma, Jha, and Yadav each signed an employee handbook with ACT, which stated in relevant part that they "understand and acknowledge that during the course of my employment, ACT's Confidential Information and Trade Secrets (as those terms [are] defined in ACT's Employee Handbook) will be made available to me" and that "this information is proprietary and critical to the success of ACT and I agree not to distribute or use such information in violation of ACT's policies. . . ."

ACT alleged that, in 2017, it "caught Defendants Sharma and Jha in the act of trying to defraud ACT," describing the alleged "fraudulent scheme" as follows:

> Sharma and Jha took an order from an ACT customer for approximately $66,000 in products. Sharma and Jha then attempted to purchase the products using a fake invoice from a fake entity called LMJ Solutions set up at the home address of the parents of Jha's then-girlfriend and now wife—Luz Aleman. Sharma and Jha intended to sell the products to the ACT customer at a higher price and keep the profits from themselves. Sharma and Jha admitted the fraudulent scheme to ACT and signed confessions promising not to do so again. ACT opted to give Sharma and Jha a second chance.

4

ACT alleged that Sharma, Jha, and Yadav continued to work together to defraud ACT. ACT alleged that in 2018, while Sharma was still employed by ACT, he orchestrated a sale of discounted ACT products to Appellants Texas Tools and Blaze Sales. ACT was unaware at the time that Texas Tools's sole director was Abrianna Brito, who was Sharma's then-girlfriend and now wife, and that the business address filed with the Secretary of State was Sharma's address. ACT thus alleged that Texas Tools "is a sham corporation formed for the use of Defendants Sharma, Jha, and/or Yadav to sell ACT products either stolen or obtained at below-market prices as a result of Defendants' fraud." Similarly, ACT later realized that, despite the apparent sales made to Blaze Sales, "there were never any written communications in [ACT's] records with Blaze as Blaze was actually Sharma, Jha and/or Yadav." Blaze Sales's sole director is Paul Abad, the cousin of Jha's wife. ACT alleged that Blaze Sales, like Texas Tools, "is a sham corporation formed for the use of Defendants Sharma, Jha, and/or Yadav to sell ACT products either stolen or obtained at below-market prices." ACT also alleged that "[o]n at least one occasion, an ACT customer called ACT requesting a quote for products. The customer received a call soon thereafter from Defendant Blaze Sales . . . asking why they had not first contacted Blaze. The only way Blaze could have known of the customer's request was from Defendant Sharma, Jha, and/or Yadav."

5

After learning of these various acts, ACT terminated its employment of Sharma, Jha, and Yadav. ACT then discovered that some products were missing from its warehouse. Those products, manufactured by ACT, were later sold by Texas Tools to one of ACT's customers. ACT also discovered that Blaze Sales had used proprietary photographs of ACT's products to market its own products. Additionally, Blaze Sales marketed a product described as a "trashcatcher" that had an identical design to one developed by Jha while he was employed by ACT.

ACT filed suit against Appellants asserting twelve causes of action including fraud and breach of contract.[1] Relevant here, ACT alleged a cause of action for tortious interference with contracts against its former employees, asserting:

> Jha and Yadav intentionally sabotaged an order of gate valves in order for ACT to lose its licenses with [API]. Since losing its API licenses, ACT has had several pending orders from its customers canceled. In those instances, a contract subject to interference existed, [Appellants] willfully and intentionally interfered with those contracts, the willful and intentional acts proximately caused ACT damage; and ACT has suffered actual damage and loss.

ACT also alleged a claim for tortious interference with commercial relations against all Appellants based on the same conduct, asserting that the sabotage of the API licenses caused ACT to lose future customers as well:

> [A]s a result of [Appellants] Yadav and Jha's acts of intentional sabotage that resulted in ACT losing all of its API licenses, ACT is unable to sell products . . . with API monograms. A reasonable

---

[1] ACT also named Leyva Iron Works, Inc., LMJ Solutions Oilfield Services, Inc., and Elvis Leyva as defendants, but they are not parties to this appeal.

6

probability existed that third party customers would have entered into contractual relationships with ACT to purchase API monogrammed products, but due to [Appellants'] intentional and malicious intervention with the formation of that relationship, ACT has suffered actual damages and losses.

Finally, ACT alleged that all Appellants misappropriated ACT's trade secrets, based in part on Appellants' alleged use of the proprietary trashcatcher design:

ACT has the original drawing of the trashcatcher and has not yet begum manufacture of the product. Based on information and belief, [Appellant Blaze Sales] hired a machine shop in Longview, Texas, to begin manufacture of the trashcatcher. Jha worked on and helped develop [it] while an employee of ACT. Through one of the companies listed below and/or others, [Appellants] have sold at least 8 of the trashcatchers to ACT customers. The trashcatchers being sold contain at least one component part manufactured by ACT with ACT's name on the component part. At least 6 of the 8 sold to ACT customers have failed in the field such that the trashcatchers have developed a reputation in the industry of being a faulty and defective ACT product.

ACT further alleged that Appellants misappropriated "trade secrets, including but not limited to, ACT's customer lists, customer contact information, customer offers or quotations, product pricing information, . . . and photographs of ACT products."

Appellants moved to dismiss three of ACT's twelve claims against them—the claims for tortious interference with commercial relations, tortious interference with contracts, and misappropriation of trade secrets pursuant to the TCPA. Appellants asserted that these three claims were based on, related to, and in response to their exercise of the rights of free speech and association, arguing that

7

ACT's tortious interference claims were "based solely on the API licenses, such that the TCPA undoubtedly applies" because the licenses were a form of communication about a matter of public concern. They asserted that, according to ACT's own pleadings, the API licenses and monograms showed "that ACT's products meet industry-written standards and globally accepted management system specifications." The Appellants likewise asserted that ACT's misappropriation of trade secrets claim was based on the former employees' communications, "i.e., the alleged sharing of 'proprietary' designs with the other [Appellants] and the machine shop in Longview and the alleged use of component parts with ACT's nameplate," were made in connection with issues related to health or safety and a good, product, or service in the marketplace, and, thus, were a matter of public concern. Appellants made similar assertions with regard to the other allegations of misappropriation involving product photos, customer lists, and other proprietary information. They also argued that these same actions implicated their right of association as defined by the TCPA, and they asserted that ACT could not establish a prima facie case with regard to any of these three challenged claims.

ACT responded to the motion to dismiss by asserting that the TCPA did not apply to the three challenged claims because its pleadings did not implicate Appellants' rights of free speech or association. ACT further asserted that the

8

commercial-speech exemption applied to its claims, because all Appellants' alleged conduct and communications were part of commercial transactions that Appellants engaged in for their own financial gain. And, alternatively, ACT argued that it had established a prima facie case for each of the three challenged causes of action.

After allowing ACT some limited discovery to support its prima facie case, the trial court ultimately denied Appellants' TCPA motion to dismiss without stating the basis for its ruling. The trial court included the statement, "In accordance with Section 27.003(c) of the Texas Civil Practice and Remedies Code, discovery is no longer suspended in this matter as of the date of this ruling." The trial court also noted that it "hereby OVERRULES the remaining relevant evidentiary objections to [ACT's] evidence attached to the Motion or its supplemental briefing."

## TCPA

In the first four issues, Appellants challenge the trial court's denial of their motion to dismiss ACT's claims for misappropriation of trade secrets, tortious interference with contract, and tortious interference with business relations pursuant to the TCPA.

9

## A.    Statutory Scheme

The TCPA allows a party to file a motion to dismiss a "legal action" that is "based on, relates to, or is in response to a party's exercise of" the rights of free speech, petition, or association.[2] FORMER TEX. CIV. PRAC. & REM. CODE § 27.003(a); *see also id.* § 27.001(2)–(4) (defining exercise of right of association, free speech, and petition). When a movant seeks dismissal under the TCPA, the movant has the initial burden to show by a preponderance of the evidence that the nonmovant has asserted a "legal action" that is based on, relates to, or is in response to the movant's exercise of one of the three rights delineated in the statute. *Id.* § 27.005(b)(1)(A)–(C).

If the movant meets that burden, the burden shifts to the nonmovant, who must establish by clear and specific evidence a "prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). This generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks and citation omitted); *see, e.g., Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (explaining that

---

[2]     All references to the TCPA are to the version that was in effect in May 2019 when the underlying motion was filed. The TCPA was amended effective September 1, 2019. Act. of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684.

Legislature's use of "prima facie case" in Chapter 27 implies minimal factual burden). Dismissal may be required, notwithstanding the nonmovant's evidence proffered to meet his burden, if the movant establishes "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." FORMER TEX. CIV. PRAC. & REM. CODE § 27.005(d).

However, a plaintiff can avoid the TCPA's burden-shifting requirements by showing that one of the act's several exemptions applies. *See id.* § 27.010; *N. Cypress Med. Ctr. Operating Co. GP v. Norvil*, 580 S.W.3d 280, 284 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (also stating, "If an exemption applies, the trial court has no choice but to deny the motion"). Among these exemptions is the commercial-speech exemption. FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b); *see Bejarano v. Dorgan*, No 03-19-00182-CV, 2019 WL 4458798, at *2 (Tex. App.—Austin Sept. 18, 2019, no pet.) (mem. op.). It provides that the TCPA does not apply to a suit against a defendant who is "primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b). The party asserting the commercial-speech exemption has the burden to prove that

11

the exemption applies to the communications at issue. *Schmidt v. Crawford*, 584 S.W.3d 640, 653 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

## B.    Standard of Review

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 83 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). We consider the pleadings and the evidence in a light favorable to the nonmovant. *Id.* at 84; *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

To the extent resolution of this appeal turns on construction of the TCPA, we review that de novo as well. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). When construing the TCPA, as with any other statute, our objective is to give effect to the legislative intent, looking first to the statute's plain language. *Id.* If that language is unambiguous, "we interpret the statute according to its plain meaning." *Id.* Additionally, we construe the TCPA "liberally to effectuate its purpose and intent fully." FORMER TEX. CIV. PRAC. & REM. CODE § 27.011(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

We are also mindful that, in makings its ruling, the trial court considers the pleadings and any supporting and opposing affidavits to evaluate whether each party has met its burden. FORMER TEX. CIV. PRAC. & REM. CODE § 27.006(a); *In re Lipsky*, 460 S.W.3d at 587. The trial court also "may allow specified and limited

discovery relevant to the motion" to dismiss. FORMER TEX. CIV. PRAC. & REM. CODE § 27.006(b); *see In re SSCP Mgmt., Inc.*, 573 S.W.3d 464, 472–73 (Tex. App.—Fort Worth 2019, no pet.) (acknowledging that "some merits-based discovery" may be necessary for nonmovant to respond to TCPA dismissal motion). Thus, in addition to the pleadings and affidavits, "a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence" in determining whether to grant or deny a motion to dismiss. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied).

## C. Commercial-Speech Exemption

Appellants moved for dismissal of ACT's tortious interference and misappropriation claims on the basis that the TCPA applied because the alleged conduct and communications implicated Appellants' rights of free speech and association as defined in the TCPA. ACT, however, asserted, in part, that the TCPA did not apply to its challenged claims because they fall under the commercial-speech exemption. We agree with ACT.

As stated above, the commercial-speech exemption provides:

[The TCPA] does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

13

FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b)(2); *Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, —S.W.3d—, 2020 WL 826729, at \*16 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet. h.) (en banc). The Texas Supreme Court has identified four elements to this exemption:

(1)    the defendant was primarily engaged in the business of selling or leasing goods or services;

(2)    the defendant made the statement or engaged in the conduct on which the claim is based in its capacity as a seller or lessor of those goods and services;

(3)    the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services that the defendant provides; and

(4)    the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *Gaskamp*, 2020 WL 826729, at \*16.

As the party asserting the commercial-speech exemption, ACT bore the burden to prove its application. *See Schmidt*, 584 S.W.3d at 653; *Schimmel*, 438 S.W.3d at 857. In determining whether ACT met this burden, we consider the pleadings and record evidence. *See* FORMER TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (stating that plaintiff's petition is "the best and all-sufficient evidence of the nature of the action" to show TCPA's application to plaintiff's claims); *The Pinkerton Law Firm, PLLC v. Univ. Cancer Ctr.*, No. 01-19-00089-CV, 2020 WL 97173, at \*3–4

14

(Tex. App.—Houston [1st Dist.] Jan. 9, 2020, no pet. h.) (analyzing allegations in live pleading to determine application of commercial-speech exemption).

We conclude that the facts as alleged in ACT's petition with regard to the causes of action for tortious interference and misappropriation of trade secrets satisfy all four *Castleman* elements.

### 1. Appellants engaged in business of selling goods

The pleadings indicate that Appellants Blaze Sales and Texas Tools, and their related officers Brito and Abad, are in the business of selling oil field tools. The first prong of the *Castleman* test is established with respect to these parties. *See Castleman*, 546 S.W.3d at 688 (identifying as element of commercial-speech exemption that defendant was primarily involved in business of selling or leasing goods or services).

The individual former employees argue that they were not in the business of selling oil field tools because they were employees of ACT. This argument ignores ACT's allegations that the individual employees were engaged in selling goods for their own benefit and/or the benefit of the other Appellants, including Blaze Sales and Texas Tools. "Notably, the exemption's plain text requires the defendant to be primarily engaged in *the business* of selling goods or services, not primarily engaged in the act of *selling*." *Gaskamp*, 2020 WL 826729, at *17; *Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4

15

(Tex. App.—Austin 2019, no pet.) (mem. op.). Based on ACT's allegations regarding the individual former employees' positions with Blaze Sales and Texas Tools, it is reasonable to conclude that Appellants were "primarily engaged" in Blaze Sales' and Texas Tools' business of selling tools for use in the oil industry. *See Gaskamp*, 2020 WL 826729, at \*17. We conclude that the first *Castleman* element is satisfied. *See* 546 S.W.3d at 688.

### 2. Appellants made the challenged statements or engaged in the challenged conduct in their capacity as a seller of those goods

ACT alleged that Appellants engaged in double dealing by arranging sales of products from ACT to Blaze Sales and Texas Tools at steeply discounted prices, and then reselling the products for their own profit through Blaze Sales and Texas Tools. The ultimate goal of these commercial transactions was financial gain for Appellants. ACT also alleged that Jha, acting together with the other Appellants as part of this ongoing scheme, misused ACT's API licenses to sabotage ACT to benefit himself and the other Appellants, thereby tortiously interfering with at least two existing contracts and with future business relations. And ACT alleged that Appellants, working together, misappropriated ACT's trade secrets and used ACT's customer lists, product photos, and product designs to market itself to potential customers. Thus, the conduct and any related communications identified by ACT in its petition implicated Appellants speech and conduct in their capacity as the ultimate seller of goods as part of their attempt to secure sales for their own

16

benefit. *See Castleman*, 546 S.W.3d at 688; *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 154 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (challenged statement of conduct must be made for purpose of securing sales in goods or services of person making statement).

Appellants argue that the tortious interference claims "arise from Appellants' alleged use of the API monogram on a Parveen gate valve and thus concern ACT's or Parveen's goods or services, not any of Appellants' goods or services." Appellants further assert that Jha's act of stamping the gate valve was not done in his capacity as a seller or lessor of those goods or services because he was not in the business of selling gate valves, arguing, "The only thing Jha was selling at the time of his alleged statement [i.e., stamping the valve with an API monogram] was his labor, and the purchaser of that labor was ACT."

However, we must consider the context in which the alleged conduct was performed to determine whether Appellants engaged in the conduct in their capacity as sellers of goods or services. *See Gaskamp*, 2020 WL 826729, at *17; *Rose*, 2019 WL 2588512, at *4. ACT's pleadings asserted that Jha and the other Appellants, acting as alter egos of one another, engaged in the challenged conduct and related communications for the ultimate purpose of making their own sales of oilfield tools. Appellants' conduct, considered in their context, support a conclusion that they engaged in the complained-of speech and conduct in their

17

capacity as sellers of goods and services. *See, e.g.*, *Castleman*, 546 S.W.3d at 688 (commercial-speech exemption applies when defendant made statement or engaged in conduct on which claim is based in his capacity as seller or lessor of those goods or services); *Gaskamp*, 2020 WL 826729, at *16 (factual allegations contained in pleadings may alone be sufficient to demonstrate nature of claims) (citing, e.g., *Rose*, 2019 WL 2588512, at *4).

Appellants rely on *Toth* to support their contention that ACT's claims do not fall within the commercial-speech exemption. *Toth*, however, is distinguishable. The court in *Toth* held that the speech at issue there did not fall within the commercial-speech exemption because the nonmovant had not proposed a commercial transaction and did not make statements to secure business for himself. 557 S.W.3d at 154. Here, by contrast, ACT alleged that Appellants' conduct and speech was for the purposes of securing business for themselves and undermining ACT's ability to compete for those same customers. *Staff Care v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (noting that in *Castleman*, supreme court "implied the exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue"). We conclude that the second *Castleman* element is satisfied. *See* 546 S.W.3d at 688.

18

### 3. *Appellants' statement or conduct arose out of a commercial transaction involving the kind of goods Appellants provide*

ACT alleged numerous commercial transactions by Appellants that gave rise to the challenged conduct or speech. These transactions included Appellants' double dealing, sales by Blaze Sales and Texas Tools (as alter egos of all Appellants) to customers of ACT's, and sales of trashcatchers based on ACT's proprietary design to ACT's former customers. ACT also alleged other acts engaged in by Appellants to procure potential sales for Appellants' own financial benefit, such as using ACT's proprietary customer lists, marketing their own products using ACT's photographs, and sabotaging ACT's own standing with the potential customers of both companies. ACT's pleadings thus implicate Appellants' speech or conduct as it arose out of commercial transactions involving the kind of goods sold by Appellants.

Appellants argue that Jha's alleged statement or conduct in stamping the gate valve with an API monogram "did not arise out of a commercial transaction because there was no commercial transaction." As discussed above, this argument misconstrues that nature of ACT's pleadings. *See Hersch*, 526 S.W.3d at 467 (plaintiff's petition is "the best and all-sufficient evidence of the nature of the action"). ACT alleged that all of Appellants' conduct and speech, including Jha's act of stamping the gate valve with the API monogram, was done as part of an ongoing effort to sabotage ACT's business and bolster their own businesses and

19

financial interests. *See Gaskamp*, 2020 WL 826729, at * 17 (holding that defendant's conduct targeting plaintiff's clients with "apparent objective of securing customers" for defendant demonstrated that conduct "arose out of a commercial transaction involving the kind of goods or services" that defendants provide); *Callison v. C & C Personnel, LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *6 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) ("Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies this element."). Thus, ACT alleged a transaction involving the kind of goods or services that Jha sold, either for his own benefit or on behalf of his alter-ego businesses and business partners. We conclude that the third *Castleman* factor is satisfied. *See* 546 S.W.3d at 688.

### 4. *Intended audience of Appellants' statements or conduct was actual or potential customers of Appellants' goods*

Finally, ACT's pleadings alleged that Appellants' acts and statements that gave rise to ACT's causes of action for tortious interference and misappropriation of trade secrets were all directed to an audience of actual or potential customers of Appellants' oilfield tools. ACT alleged that Appellants' double dealing, sabotage attempts, and misappropriations were all directed toward Appellants' customers, either current or potential, in an effort to secure sales for Appellants for their own financial interests.

20

Appellants argue that their communications with each other that form the basis of ACT's trade-secrets claim cannot satisfy the requirements of the commercial-speech exemption because they only communicated with each other, not with an actual or potential customer of theirs. We do not agree, however, that Appellants can isolate smaller communications within a larger scheme in order to avoid the commercial-speech exemption. ACT's allegations did not challenge communications among Appellants. Rather, any communications among Appellants' themselves were incidental to the larger scheme identified in ACT's pleadings. ACT alleged that Appellants sold trashcatchers—based on ACT's own proprietary design with components marked with ACT's name—to Appellants' own customers and that Appellants used ACT's customer lists and product photos in marketing their own goods to potential customers of Appellants.

This implicates communications or conduct by Appellants directed toward their own actual or potential customers. *See Castleman*, 546 S.W.3d at 688; *Gaskamp*, 2020 WL 826729, at \*18 (holding that defendants' sending brochures to their former employer's clients as part of their effort to market their new employer's services to potential new customers satisfied fourth element); *Staff Care*, 2019 WL 2121116, at \*8 (holding that commercial-speech exemption applies when business for which one works stands to profit from statements or conduct at issue). We conclude that the fourth *Castleman* element is satisfied, and,

21

thus, the commercial-speech exemption applies to ACT's claims. *See* 546 S.W.3d at 688.

Because we conclude that the commercial-speech exemption applies to ACT's challenged claims, the trial court had no choice but to deny Appellant's motion, *see Norvil*, 580 S.W.3d at 284, and the TCPA does not apply to ACT's claims for tortious interference or misappropriation of trade secrets against Appellants. We need not address the remaining portions of the parties' arguments on appeal regarding whether the TCPA applies to ACT's claims or whether ACT established a prima facie case for each of the challenged claims. *See id.* (plaintiff can avoid burden-shifting requirements by showing that exemption applies) (citing TEX. CIV. PRAC. & REM CODE § 27.010).

We overrule Appellants' first through fourth issues.

## Appellants' Remaining Issues

In their fifth issue, Appellants argue that the trial court erred by denying their motion for attorney's fees, costs, other expenses, and sanctions pursuant to Civil Practice and Remedies Code section 27.009. The TCPA provides that the trial court shall award costs, reasonable attorney's fees, other expenses, sanctions, such as those sought by Appellants here, "if the court orders dismissal of a legal action under [the TCPA]." FORMER TEX. CIV. PRAC. & REM. CODE § 27.009(a). Because we affirm the trial court's denial of Appellants' motion to dismiss, they

22

are not entitled to these damages and costs. *See id.* We overrule Appellants' fifth issue.

In their sixth issue, Appellants complain that the trial court erred by ordering that "discovery is no longer suspended in this matter." Appellants assert that other defendants, Leyva Iron Works, Inc. and Elvis Leyva—who are not parties to this appeal—filed their own separate motion to dismiss pursuant to the TCPA and that consideration of the Leyva parties' TCPA motion was stayed by Appellants' filing of this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b) (providing that filing certain interlocutory appeals, including appeal of denial of TCPA motion to dismiss, "stays the commencement of a trial in the trial court pending resolution of the appeal" and "also stays all other proceedings in the trial court pending resolution of appeal"). Appellants assert that, because the Leyva parties' motion to dismiss pursuant to the TCPA is still pending in the trial court, the trial court erred in stating that "discovery is no longer suspended in this matter" in its order denying Appellants' TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(c) (providing that "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss"); *id.* § 27.006(b) (providing that trial court may allow specified and limited discovery relevant to TCPA motion to dismiss).

23

The trial court's order stating that "discovery is no longer suspended in this matter" was made in the context of the TCPA motion filed by Appellants in this case against ACT. Nothing in the record before us in this interlocutory appeal between Appellants and ACT demonstrates the current status of any other motions or proceedings in the trial court. To the extent Appellants are arguing that they should not be required to participate in discovery while other co-defendants have a motion to dismiss pending, we conclude that this claim is not ripe. There is nothing before this Court indicating that the trial court has attempted to enforce any discovery in contravention of the TCPA's stay of discovery or the Civil Practice and Remedies Code's stay of proceedings. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(c); *id.* § 51.014(b); *see also Perry v. Del Rio*, 66 S.W.3d 239, 249–50 (Tex. 2001) (discussing ripeness doctrine and stating that "central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"). To the extent Appellants are attempting to raise this concern on behalf of other co-defendants who are not parties to this appeal, we conclude that they lack standing to do so. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (to have standing, party must be personally aggrieved, and alleged injury must be concrete and particularized, actual or imminent, and not hypothetical).

We overrule Appellants' sixth issue.

## Conclusion

We affirm the order of the trial court denying Appellants' motion to dismiss pursuant to the TCPA.

Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.